Beers, Appellant, *v.* Muth.

Argued April 27, 1959. Before BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*William J. Woolston,* for appellant.

*Bernard P. Carey, Jr.,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 28, 1959:

Thomas E. Beers was killed as the result of a collision between two automobiles, one driven by Joseph Muth and the other by Sylvester Bennett. The administratrix of Beers' estate filed an action in trespass against Joseph Muth who brought in Sylvester Bennett as an additional defendant. The jury returned a verdict in the amount of $20,649.40 against the additional defendant, Bennett, but exonerated Muth. The plaintiff did call them as on cross-examination but questioned them very briefly. Since the plaintiff does not complain of the verdict against Bennett, no purpose will be served in discussing that phase of the case.

Plaintiff's counsel asked Muth only several revelatory questions: "Q. Are you the Mr. Muth who was driving a car that came into contact with Mr. Bennett's

car on Castor Avenue that afternoon? A. Yes. . . . Q. Do you feel that your experience makes you competent to gauge comparative speeds of automobiles? A. I have some knowledge. Q. Mr. Muth, just before the impact do you know how many miles per hour your vehicle was traveling? A. Approximately 18 miles an hour."

Before the court's charge to the jury, the plaintiff asked for an affirmance of the following point: "The jury may infer from each of the two defendants' failure to testify and take the stand on his own behalf, that the testimony of each defendant would have been unfavorable to each defendant." The judge refused to affirm the point and the plaintiff advances that refusal as reason for new trial. Law is the distillation of common sense as drawn from the experience of mankind. And recorded experience through the centuries reveals that unless there is some obvious reason to establish the contrary, the person who fails to offer an explanation, when he is charged with misconduct, runs the risk of having the world believe that he has no satisfactory explanation to produce. Of course, we know that many a blameless person is accused of misbehavior of one character or another, but it still remains true that unless there exists a palpable reason for sealing one's lips, the world expects speech when the finger is lifted to accuse. We are not here considering the constitutional provision that no person is required to reply to any question which might subject him to criminal prosecution.

The issue before us in this case involves only the question as to whether a jury may be allowed to draw an adverse inference from the failure of a person charged with negligence to take the stand to give his version of the controversy which brought him into court. The rule in Pennsylvania on this subject was

well stated by President Judge RICE of the Superior Court in the case of *Wills v. Hardcastle,* 19 Pa. Superior Ct. 525, 529 : "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." The rule has been affirmed by this Court many times, and as late as 1952, in *Haas v. Kasnot,* 371 Pa. 580, 584.

The lower court did not deny the existence of, or attempt to controvert, the rule, but stated that the cross-examination of Muth took his case out of the rule. In replying to the plaintiff's request for affirmance of the point above cited, the trial judge said to the jury : "The plaintiff has asked me to charge the jury may infer, from each of the two defendants' failure to testify and take the stand in his own behalf, that the testimony of each defendant would have been unfavorable to each defendant. That is normally true, but here you had each defendant telling his story under cross-examination. You may ask yourself, was there any obligation for them to get on the stand again?"

The judge's refusal to affirm the requested point was error and his remarks to the jury embellished the error. It was not for the jurors to ask themselves if the defendant had any obligation to take the stand. The province of the jury, after being properly instructed in the matter, was to determine whether the defendant's failure to testify would justify their concluding he was concealing something which, if revealed, might work to his disadvantage. As has been noted, the plaintiff's counsel's questioning of Muth was fragmentarily brief. Necessarily it would have to be brief. Muth was antagonistic to the plaintiff's interests. For the plaintiff to invite Muth to testify at will and at

length would have been to place a sword in the hands of his adversary.

Thus, Muth's ephemeral appearance as a witness could not be interpreted as a recital of his side of the case. If he wished the jury to see the picture of the accident through his eyes he could have drawn that picture by taking the stand in his own right. He could not expect that a couple of pencil strokes would give the jury a panoramic view of how he saw the fatal collision unfold.

The defendant had a choice between two alternatives. He could acquaint the jury with the whole story as he knew it, hoping to convince them that this would show he was without fault, or he could refuse to testify, hoping that the jury would not be guided by the supposition which has influenced mankind throughout the ages, namely, that silence can mean affirmation. He chose the latter course, which was his privilege, but the court failed to tell the jury the inferential price the defendant had to pay for that privilege.

The lower court took the position, however, that no adverse inference could be drawn from Muth's failure to testify since it is possible the jury decided in his favor not because they were lacking instructions on the rule under consideration but because they found that the plaintiff had failed to produce any negligence against him. In other words, the lower court maintained that it did not matter what Muth said or did not say, for the jury's verdict could have been predicated on a conclusion that the plaintiff's case fell short of showing that Muth was to blame at all. This argument, however, carries within its compass the germs of its own demise. At the termination of the plaintiff's case, Muth's counsel moved for a nonsuit on the specific proposition that the plaintiff had not made out a prima facie case. The trial judge refused the motion on the basis that the plaintiff *did* make out a prima facie case.

The plaintiff also avers that the trial court erred in failing to affirm a second point, namely, "Proceeding at, or in excess of the permissible maximum speed on a highway that is slippery because of snow and ice is a failure to use reasonable care."

This reason for a new trial is not supported by the record. The matter of speed, as applied to movement over snow and ice, was adequately covered by the Judge in his general charge.

Judgment reversed with a v.f.d.n.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.