567 A.2d 684

**F. Emmett FITZPATRICK, Appellant,**

**v.**

**PHILADELPHIA NEWSPAPERS, INC. and Anthony Lame.**

Superior Court of Pennsylvania.

Argued April 18, 1989.

Filed Dec. 14, 1989.

James E. Beasley, Philadelphia, for appellant.

Frank L. Corrado, Jr., Philadelphia, for appellees.

Before ROWLEY, POPOVICH and JOHNSON, JJ.

ROWLEY, Judge:

On November 10, 1974, the *Philadelphia Inquirer* printed an article headlined "D.A. Gets Ex–Client Off Light." The article reported that appellant F. Emmett Fitzpatrick, then Philadelphia District Attorney, had recommended that Joseph Nardello, who was being sentenced for his fifth felony, be placed on probation. According to the article, U.S. Supreme Court records showed that "in 1968, while a defense attorney, Fitzpatrick represented Nardello and a codefendant in a criminal case." Appellant subsequently instituted the present action for defamation against appellees Philadelphia Newspapers, Inc., the publisher of the *Inquirer*, and *Inquirer* reporter Anthony Lame, the writer of the allegedly defamatory article.

Two assertions lie at the heart of appellant's claim. First, appellant contends that he did not *recommend* probation for Nardello, but instead informed the sentencing judge

that his office would have no objection to a sentence of probation and, in a phrase omitted from the *Inquirer* article, that "[w]e leave the matter entirely to your Honor." Second, appellant asserts that while he had once presented to the U.S. Supreme Court a legal argument that was applicable to the case of Joseph Nardello, a client of A. Charles Peruto, as well as to the case of his own client, Isadore Weisberg, he did so because the rules of the Supreme Court allowed only one lawyer to argue on behalf of the two similarly situated clients. Nardello was never his "client," appellant asserts, nor did he ever "represent" Nardello.

At the close of the trial of appellant's libel action, the jurors were supplied with a verdict sheet which asked 1) whether the November 10, 1974 article was defamatory of appellant; 2) if so, whether the article was false; 3) if the article was both defamatory and false, whether appellees published it with either actual knowledge that it was false or with subjective awareness of its probable falsity (i.e., with malice); 4) if they did, whether appellant sustained actual injury as a result of the publication of the article; and 5) if he did, what amounts of compensatory and punitive damages should be assessed. The jury answered no to the first question, thus finding in favor of appellees without having to consider the remaining questions. Post-trial motions were filed and denied, judgment has been entered on the verdict, and appellant's appeal is now before us. We affirm the judgment in favor of appellees.

Of the ten issues raised by appellant in this appeal, nine allege error on the part of the trial court. Appellant contends that the trial court erred in: 1) allowing testimony that appellant had taken the Fifth Amendment in a prior, unrelated proceeding; 2) refusing to instruct the jury that, as a matter of law, there was no attorney-client relationship between appellant and Nardello; 3) refusing to instruct the jury that the challenged article was, as a matter of law, defamatory; 4) instructing the jury that the defamatory nature of the challenged article must be proved by clear and

convincing evidence; 5) instructing the jury that they were to give words "their ordinary meaning" and "not pick out and isolate particular words or phrases," thus allowing the jury to reach an incorrect conclusion regarding the existence of an "attorney-client" relationship; 6) failing to answer questions submitted by the jurors in a manner that would alleviate their evident confusion; 7) refusing to grant a new trial on the ground that defense counsel, during closing argument, compared appellant to a mentally deranged movie character; 8) refusing to instruct the jury that an adverse inference could be drawn from the failure of appellee Anthony Lame, the writer of the challenged article, to appear as a witness; and 9) refusing to grant a mistrial after Carl Lunkenheimer, a former assistant district attorney, made highly prejudicial remarks concerning appellant and his counsel.

Although we have reviewed appellant's claims of trial court error and have concluded that one or more of the claims may well have merit, it is appellant's remaining claim which proves to be dispositive of this appeal. Appellant contends that, in addition to having established the falsity of the challenged article, he has also met the burden, imposed on defamation plaintiffs who are public officials by the U.S. Supreme Court's decision in *New York Times Company v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964), of proving by clear and convincing evidence that in publishing the challenged article appellees acted with actual malice, that is, knowing the article was false or with reckless disregard of its truth or falsity, *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa.Super. 508, 512–13, 546 A.2d 639, 642 (1988), *alloc. denied*, 522 Pa. 576, 559 A.2d 37 (1989). Having reviewed the record that has been certified to this Court, as well as the briefs and arguments of the parties, we are constrained to disagree. Our decision to affirm the trial court on this basis makes it unnecessary for us to decide the other issues raised by appellant, except to the extent that they have an impact upon the question of actual malice.

Preliminarily, we note that our conclusion that the actual malice issue is controlling rests on several considerations. It is, of course, settled law that we may affirm the decision of the trial court if it is correct on any ground. *E.J. McAleer & Co., Inc. v. Iceland Products, Inc.*, 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977). The actual malice issue has in fact been presented to, and addressed by, the trial court. Appellees asserted in their trial brief that the facts of the case did not show actual malice; they made the same assertion in support of their unsuccessful motion for entry of a nonsuit at the close of appellant's case; they sought a directed verdict, also unsuccessfully, at the close of the evidence; in response to appellant's post-trial motions, they filed an "alternative motion for post-trial relief" arguing, as an alternative basis for entry of judgment, that the trial court's denial of their motions for nonsuit and for a directed verdict was erroneous in view of appellant's failure to prove actual malice; and the trial court addressed this issue in its opinion of September 21, 1988.[1]

In addition, the parties have raised the actual malice issue in this appeal. Appellees urge us to affirm the judgment entered in their favor on the basis of what they contend is appellant's failure to prove actual malice. Appellant, as noted above, asserts that he has met his burden of proving the existence of actual malice with clear and convincing clarity.

There is, finally, an even more fundamental basis for our conclusion that actual malice is the controlling question in this case. The sufficiency of the evidence to support a jury's finding of actual malice is a question of law, *Harte–Hanks Communications, Inc. v. Connaughton*, — U.S. —, —, 109 S.Ct. 2678, 2694, 105 L.Ed.2d 562 (1989), and a court reviewing such a finding is required to " 'exercise independent judgment and determine whether the record

---

**1.** After discussing the meaning of the term "actual malice," the trial court concluded that the jury made one or more of several determinations, all of which would indicate an absence of actual malice. In fact, as noted above, the jury did not reach the question of actual malice, as they found that the article in suit was not defamatory.

establishes actual malice with convincing clarity,' " *id.* at
——, 109 S.Ct. at 2681 (quoting *Bose Corporation v. Consumers Union,* 466 U.S. 485, 514, 104 S.Ct. 1949, 1967, 80
L.Ed.2d 502 (1984)).  Our duty in this regard is constitutionally based, *id.,* and derives from "[o]ur profound national
commitment to the free exchange of ideas, as enshrined in
the First Amendment," *id.* at ——, 109 S.Ct. at 2695.

> "Judges, as expositors of the Constitution," have a duty
> to "independently decide whether the evidence in the
> record is sufficient to cross the constitutional threshold
> that bars the entry of any judgment that is not supported
> by clear and convincing proof of 'actual malice.' "

*Id.* (quoting *Bose Corporation v. Consumers Union,* 466
U.S. at 511, 104 S.Ct. at 1965).  For that reason, after this
Court, reviewing the appeal of the defendant publisher in
*Sprague v. Walter,* 357 Pa.Super. 570, 589–90, 516 A.2d
706, 716–17 (1986), *aff'd,* 518 Pa. 425, 543 A.2d 1078 (1988),
*appeal dismissed,* —— U.S. ——, 109 S.Ct. 548, 102 L.Ed.2d
576 (1988), determined that a new trial was warranted to
remedy an error of law by the trial court, the Court went on
to review the record to determine whether the evidence was
constitutionally sufficient to warrant a finding of actual
malice or whether, on the contrary, the evidence was insufficient in that regard and the defendant was therefore
entitled to judgment n.o.v.  Indeed, when the U.S. Supreme
Court first established the actual malice requirement for
plaintiffs who are public officials in *New York Times v.
Sullivan, supra,* the Court, after reversing the judgment
entered in favor of the plaintiff, observed that "[s]ince
[plaintiff] may seek a new trial, we deem that considerations of effective judicial administration require us to review the evidence in the present record to determine whether it could constitutionally support a judgment for [plaintiff]."  376 U.S. at 284–85, 84 S.Ct. at 728.  After making
" 'an independent examination of the whole record,' " *id.* at
285, 84 S.Ct. at 729 (quoting *Edwards v. South Carolina,*
372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963)),
the Court held that the evidence of actual malice was

constitutionally insufficient to sustain a judgment for the plaintiff, *id.* 376 U.S. at 286, 84 S.Ct. at 729.

The same "considerations of effective judicial administration" which led to these decisions suggest that granting a new trial in the present case on the basis of trial court error might well prove to be an unnecessary and futile gesture if we do not first determine that the evidence offered by appellant would, on remand, be constitutionally sufficient to sustain a finding of actual malice. Accordingly, we will examine the record to determine whether, as appellant asserts, there exists clear and convincing evidence of actual malice. In addition, in order to determine whether evidence of actual malice may have been improperly excluded, we will consider appellant's claim that the court erred in refusing to instruct the jury that an adverse inference could be drawn from appellee Anthony Lame's failure to testify.[2] Appellant avers that Lame is "a party to this action having knowledge bearing on the questions of falsity and actual malice" (Amended Brief for Appellant at 42).

It is indeed settled law that a party's failure to testify at a civil trial raises an inference of fact that the party's testimony would have been adverse or unfavorable to him. *Beers v. Muth,* 395 Pa. 624, 626–27, 151 A.2d 465, 465 (1959); *Pratt v. Stein,* 298 Pa.Super. 92, 151, 444 A.2d 674, 705 (1982); *Schwegel v. Goldberg,* 209 Pa.Super. 280, 284–85, 228 A.2d 405, 408 (1967). The fact that Lame was available to be called by either side does not bar the application of this rule, as it would if he were a non-party witness. *Pratt v. Stein,* 298 Pa.Super. at 151–52 n. 51, 444 A.2d at 705 n. 51; *but see Bulman v. Myers,* 321 Pa.Super. 261, 265–66, 467 A.2d 1353, 1355–56 (1983) (affirming refusal of adverse inference instruction without distinguishing between party-defendant, who was available but did not testify, and a non-party witness). However, if a plaintiff has not supplied evidence sufficient to meet his burden of proof, the adverse inference created by the defendant's failure to testify will not supply it for him. *Harring v.*

---

**2.** Our review reveals that none of the appellant's other allegations of trial court error bears on the question of actual malice.

*Com., Unemployment Compensation Board of Review,* 70 Pa.Cmwlth. 173, 176, 452 A.2d 914, 916 (1982) (*disapproved on other grounds, Vann v. Com., Unemployment Compensation Board of Review,* 508 Pa. 139, 148 n. 2, 494 A.2d 1081, 1085 n. 2 (1985)); *see also Pratt v. Stein,* 298 Pa.Super. at 151, 444 A.2d at 705 (defendant's failure to testify cannot supply negligence on his part because negligence must be shown affirmatively by plaintiff); *Schwegel v. Goldberg,* 209 Pa.Super. at 284, 228 A.2d at 408 (same). As this Court explained in *Schwegel v. Goldberg, supra,* what may be inferred from a defendant's failure to testify is that the plaintiff and his witnesses truthfully described the happening of the events at issue. *Id.* at 285, 228 A.2d at 408. Thus, even if we assume that appellant was entitled to an adverse inference instruction and that, as a result, appellant and his witnesses should be regarded as credible, we are still required to determine whether the evidence supplied by appellant constitutes clear and convincing evidence that appellees acted with actual malice.[3]

In determining whether appellees acted with actual malice, the standard to be applied is not objective (i.e.,

---

**3.** Appellees argue that the resolution of the adverse inference issue is controlled by this Court's decision in *Sprague v. Walter,* 357 Pa.Super. 570, 516 A.2d 706 (1986), *aff'd,* 518 Pa. 425, 543 A.2d 1078 (1988), *appeal dismissed,* —— U.S. ——, 109 S.Ct. 548, 102 L.Ed.2d 576 (1988), also a defamation action brought by a public figure. In that case, reporter Greg Walter was one of a number of defendants who, by stipulation, were dropped from the case on the condition that the plaintiff be permitted to try the case as though they remained parties to the suit. 357 Pa.Super. at 575 n. 1, 516 A.2d at 709 n. 1. Although Walter did not testify, this Court held that an adverse inference was inappropriate in light of the fact that Walter had been extensively deposed and was available to be called by the plaintiff at trial. *Id.* at 611, 516 A.2d at 728. This ruling, without more, would dispose of the adverse inference claim raised by appellant in the present case.

On appeal, however, the Supreme Court held that "the issue of whether Walter was medically incapable of being a witness for PNI [the defendant] was one that the trial court itself should have determined, not the jury.... In sum, we agree with the Superior Court's conclusion that the trial judge ... erred in ruling that it was a jury question." 518 Pa. at 442 n. 9, 543 A.2d at 1086 n. 9 (citations omitted). As the basis of the Supreme Court's ruling differs from that of the Superior Court, we do not rely on the Superior Court's ruling in the present case.

whether a reasonably prudent person would have published the challenged article), but subjective. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); *Curran v. Philadelphia Newspapers*, 376 Pa.Super. at 514, 546 A.2d at 643. As the U.S. Supreme Court observes in its recent decision in *Harte–Hanks v. Connaughton, supra,*

> [a]ctual malice ... requires at a minimum that the statements were made with a reckless disregard for the truth. And although the concept of "reckless disregard" "cannot be fully encompassed in one infallible definition," *St. Amant v. Thompson*, 390 U.S. 727, 730 [88 S.Ct. 1323, 1325, 20 L.Ed.2d 262] (1968), we have made clear that the defendant must have made the false publication with a "high degree of awareness of ... probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 [85 S.Ct. 209, 216, 13 L.Ed.2d 125] (1964), or must have "entertained serious doubts as to the truth of his publication," *St. Amant, supra* [390 U.S.] at 731 [88 S.Ct. at 1325].

— U.S. at ——, 109 S.Ct. at 2685–86. Failure to investigate, without more, will not support a finding of actual malice, nor will ill will or a desire to increase profits. *Id.* at ——, 109 S.Ct. at 2685, 2696.

■ Our review of the record reveals that appellant has failed to provide clear and convincing evidence of actual malice. Appellant, relying on the 1976 decision of the Disciplinary Board of Pennsylvania which found that there had been no attorney-client relationship between himself and Nardello, contends that the absence of such a relationship was a fact which could have been learned by appellees prior to the writing of the challenged article if they had made a "true effort to ascertain the formal legal status of Mr. Fitzpatrick's involvement in the United States Supreme Court" and had not drawn unsupported legal conclusions with "abandon" (Amended Brief for Appellant at 27). Whether additional investigation could have uncovered such a "fact" is highly debatable. At trial, Stephen Gillers, called by the defense as an expert witness in the area of

professional responsibility and procedure, testified that in his opinion appellant represented Nardello for purposes of the Supreme Court argument and Nardello was, at the time of the argument, appellant's client (N.T., June 7, 1988, at 36–37). If appellees, prior to publication of the article and without the benefit of a ruling by the Disciplinary Board, had sought expert advice in this matter, it is entirely possible that they would have received an opinion identical to that offered by Mr. Gillers at trial. For that reason, we decline to accept appellant's characterization of the status of appellant's relationship with Nardello as a "fact" which could have been discovered by appellees if they had been sufficiently diligent.

More importantly, however, we focus upon the investigatory efforts actually undertaken by appellees, not upon the additional efforts that might hypothetically have been undertaken. *See Curran v. Philadelphia Newspapers,* 376 Pa.Super. at 525, 546 A.2d at 648 (focus is upon what defendant did, not upon what it did not do). The answers of appellee Anthony Lame, the writer of the article, to interrogatories propounded by appellant in 1974 and read into evidence at trial indicate that he first learned of appellant's participation in the Nardello case in August 1974 and that the delay in publishing the article was due to his (Lame's) investigation and research. Lame also averred that he examined the entire record of the Nardello case on file with the Clerk of the U.S. District Court for the Eastern District of Pennsylvania and that an associate examined the entire record on file with the clerk of the U.S. Supreme Court. Assuming for the sake of argument that the article's statements on the attorney-client issue were false, and that through additional investigation appellees could have reached the same conclusion in 1974 that was reached by the Disciplinary Board in 1976, we do not perceive in appellees' actions the knowledge of falsity or serious doubts as to truth necessary to support a finding of actual malice. Mere negligence or carelessness, even if such were present here, is not evidence of actual malice. *Id.* at 519, 546 A.2d

at 645. Evidence may be sufficient to support a finding of negligence in failing to discover misstatements, but constitutionally insufficient to show the recklessness required for a finding of actual malice. *New York Times v. Sullivan*, 376 U.S. at 288, 84 S.Ct. at 730.

Nor do we agree with appellant that the following statement of Anthony Lame, made in 1981 in response to a request for admission, establishes serious doubt on the part of appellees:

> Defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the nature of or existence of the attorney-client relationship between F. Emmett Fitzpatrick, Jr. and Joseph Francis Nardello prior to November 10, 1974.

We do not read Lame's answer as an admission that in 1974 he entertained serious doubts as to the truthfulness of the statements made in the challenged article, but as a reluctance in 1981 to offer an opinion on what had become, following the Disciplinary Board's findings and the claims raised by appellant in the present action, a highly technical question of law.

Appellant also argues that appellees' refusal to print a retraction of the allegedly false assertions constitutes some evidence of actual malice. We note, however, that the *Inquirer* eventually published a front-page article headlined "DA Fully Cleared of Ethics Charges" (N.T., May 31, 1988, at 250). Moreover, while appellant testified that the *Inquirer* never printed a retraction, he never testified that he had actually asked the newspaper to do so.

Assuming for the sake of argument that the challenged article is both defamatory and false, we conclude that appellant has nevertheless failed to provide clear and convincing evidence that appellees knew of its falsity or published it with reckless disregard of its truth or falsity. For that reason, we affirm the judgment entered in favor of appellees and against appellant.

Judgment affirmed.