J-A22029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NADER MOTEE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBAB BAZZAZAN, TRUSTEE OF THE | : | No. 395 EDA 2025 |
| SARA AND NADER MO TRUST | : | |

Appeal from the Judgment Entered December 9, 2024
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2023-C-1165

BEFORE:   LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.<sup>*</sup>

MEMORANDUM BY LANE, J.:                    **FILED OCTOBER 15, 2025**

Nader Motee ("Motee") appeals from the judgment which denied his request for declaratory relief against Robab Bazzazan ("Bazzazan"), as trustee of the Sara and Nader Mo Trust ("Trust").  We affirm.

The trial court set forth the relevant factual history underlying this matter as follows:

> In 1997, . . . Bazzazan, along with her husband, Hossein Mohammadiou [("Hossein")], and their daughters, Solmaz and Sara, moved from Iran to California.  Hossein, a professor who frequently travelled back to Iran to manage the family's business interests abroad, appointed Sara to manage the family's state-side financial affairs, as . . . Bazzazan spoke little English.  In 2008, Sara moved from California to Pennsylvania, along with her husband, . . . Motee, who had recently joined the faculty of Lehigh University.  In 2018, Hossein became ill.  Soon after, Hossein and . . . Bazzazan decided to move to Pennsylvania for Hossein's medical treatments.

_____

<sup>*</sup> Former Justice specially assigned to the Superior Court.

As part of the move to Pennsylvania, Hossein and . . . Bazzazan agreed to sell their California home.  In 2019, Hossein and Bazzazan executed powers of attorney naming Sara as agent (the "POAs"), so that Sara could assist them with the sale of the family's California home.  Notably, the POAs were generic forms that Sara found online; *i.e.*, the POAs were not tailored to incorporate any Pennsylvania-specific legal requirements found in Chapter 56 of the Probate, Estate and Fiduciaries Code (the "PEF Code"), 20 Pa.C.S.A. §§ 5601-5614.

Hossein and Bazzazan, with the help of Sara, structured the sale of the family's California home as a 1031 exchange in order to take advantage of certain tax and financial strategies.  To that end, in May of 2019, Hossein and Bazzazan conveyed their California property into the [Trust, of which they were the sole trustees], and then sold the California property.  The Trust used the proceeds to purchase three investment properties in Pennsylvania, including the purchase of the Lanark Property on June 5, 2019 - from Sara's husband, . . . Motee.  [Motee had purchased the Lanark Property three months earlier, in March 2019, for $1,050,000.  Thus, when he conveyed that property to the Trust in June 2019 for the sale price of $1,200,000, he realized a profit of $150,000.]

As part of the Trust's purchase of the Lanark Property, on June 30, 2019, . . . Motee and the Trust executed a 10-year lease [("Lease")] that permitted Motee and Sara to continue residing at the Lanark Property, rent free.  The Lease was signed by Motee as tenant, and by Sara for the landlord Trust, using the POAs for her parents, the trustees.  Included in the Lease is an option for Motee to repurchase the Lanark Property at its current market value (less credit for any improvements made during the lease term).

[The option states:

14. OPTION TO PURCHASE

Tenant shall have the option, but not the obligation, to purchase the property from Landlord at any time during the lease term, provided that Tenant is not in default of any of the terms and conditions of this lease and that Tenant provides written notice to Landlord of its intention to exercise the purchase option at least

sixty (60) days prior to the intended purchase date. The purchase price of the property shall be determined based on the current market price less the cost of any renovations or improvements made to the property by Tenant during the lease term, in accordance with the provisions of Paragraph 7. To determine the estimated value of the renovations conducted throughout the property, independent contractors shall be engaged to provide current market equivalent quotes. If Tenant exercises the option to purchase the property, Tenant shall pay the balance of the purchase price, less the amount of any approved renovation costs, to Landlord in full at the time of the purchase closing, and the transfer of the property shall be completed in accordance with applicable laws and regulations.

Lease[, 6/30/19,] at ¶ 14.]

In January of 2020, Hossein succumbed to his illness, leaving . . . Bazzazan as the sole trustee of the Trust.

In early 2023, Motee contacted Bazzazan seeking to exercise the option to purchase the Lanark Property back from the Trust. Motee's request came as a surprise to Bazzazan, who claimed to be unaware that Sara had used the POAs to enter into the Lease on behalf of the Trust. For reasons not disclosed at trial, Bazzazan also became very distrustful of Sara around this same time. Accordingly, Bazzazan, acting for the Trust, refused to sell the Lanark Property back to Motee, and threatened to eject Motee and Sara from the Lanark Property.

On April 25, 2023, Motee commenced this declaratory judgment action seeking to confirm the validity of the Lease and his option to purchase the Lanark Property back from the Trust.

Trial Court Judgment, 12/9/24, at 1-3 (footnote omitted).

In his complaint for declaratory judgment, Motee requested a declaration that: (1) the Lease is valid; and (2) he may exercise the option in the Lease to purchase the Lanark Property. The matter proceeded to a non-

jury trial in August 2024. Motee presented the testimony of his wife, Sara, and his mother-in-law, Bazzazan, who testified through a translator. Motee did not testify. Following trial, the court permitted the parties to submit post-trial briefs.

On December 9, 2024, the trial court entered a declaratory judgment in which it denied Motee's request for declaratory relief. The trial court reasoned that: (1) because the Lease was for a period greater than three years, the statute of frauds required that it be signed by Hossein and Bazzazan, as the trustees, in order to be enforceable; (2) Sara could not sign the Lease on behalf of the trustees because the POAs to act on their behalf were invalid and, therefore, nullities, as they lacked the specific notice required by section 5601(c) and the agent acknowledgement required by section 5601(d); (3) the equitable exception to the statute of frauds did not apply because Motee failed to meet his burden of proving that he made substantial improvements to the Lanark Property;[1] (4) Motee's reliance on the immunity provisions of section 5608(d) was misplaced, as that section was inapplicable to this case. Motee did not file a timely post-trial motion. However, he thereafter sought, and the trial court granted, leave to file a post-trial motion *nunc pro tunc*. On January

_____

[1] In his proposed conclusions of law, Motee sought findings that the market value of the Lanark Property was between $810,000 and $873,000, minus the cost of the improvements that he had allegedly made to the property, which he claimed totaled $697,977.23. **See** Motee's Proposed Conclusions of Law, 6/17/24, at 8. In other words, Motee sought a finding that he was entitled to purchase the Lanark property for a price between $112,000 and $175,000.

J-A22029-25

14, 2025, the trial court denied the post-trial motion. Motee thereafter filed a timely notice of appeal.[2] Both Motee and the trial court complied with Pa.R.A.P. 1925.[3]

Motee raises the following issues for our review:

1. Whether the trial court committed an error of law and/or abused its discretion in determining the [POA] executed by . . . Bazzazan was invalid?

2. Whether the trial court committed an error of law and/or abused its discretion in failing to conclude that the Lease was validly executed since [Motee] was entitled to rely on the representations of Sara . . ., . . . Bazzazan's apparent agent?

3. Whether the trial court committed an error of law and/or abused its discretion in its failure to properly interpret and apply 20 Pa.C.S.[A.] § 5608 and related case law?

_____

[2] Motee initially filed a notice of appeal prior to filing his post-trial motion. He then filed a second notice of appeal following the entry of the order denying his post-trial motion. This Court discontinued the initial appeal as duplicative of the instant appeal. Additionally, with respect to this appeal, Motee purported to appeal from the order denying post-trial relief. However, an appeal properly lies from the entry of judgment, not from the order denying post-trial relief. *See Affordable Outdoor, LLC v. Tri-Outdoor, Inc.*, 210 A.3d 270, 279 n.12 (Pa. Super. 2019) (holding that, in a declaratory judgment action, the judgment for purposes of appeal is the initial order declaring rights as to which post-trial motions are filed, such that the appeal of judgment is triggered by the order denying post-trial motions); *see also Peters v. Nat'l Interstate Ins. Co.*, 108 A. 3d 38, 41 n.2 (Pa. Super. 2013) (stating that an appeal after disposal of post-trial motions is properly taken from earlier declaratory judgment order). We have corrected the caption accordingly.

[3] In lieu of authoring an opinion pursuant to Rule 1925(a), the trial court directed this Court to its December 9, 2024 declaratory judgment, wherein it set forth its rationale for denying the requested declaratory relief. Unfortunately, by directing this Court to its prior judgment, the trial court did not provide this Court with its rationale for several of the issues raised by Motee in his Rule 1925(b) concise statement.

- 5 -

4. Whether the trial court committed an error of law and/or abused its discretion in determining the testimony of . . . Bazzazan was credible?

5. Whether the trial court committed an error of law and/or abused its discretion in concluding that there was no evidence of substantial improvements and/or an equitable exception under the statute of frauds?

6. Whether trial court committed an error of law and/or abused its discretion in applying an adverse inference based on [Motee's] failure to testify?

Motee's Brief at 5-6 (issues reordered for ease of disposition, unnecessary capitalization omitted).

When reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow:

[W]e are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion. The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. Where the trial court's factual determinations are adequately supported by the evidence[,] we may not substitute our judgment for that of the trial court.

*Consolidation Coal Co. v. White*, 875 A.2d 318, 325 (Pa. Super. 2005) (citation omitted).

In his first issue, Motee challenges the trial court's interpretation and construction of the POAs. It has been a fundamental principle that POAs are strictly construed, and the grant of special powers is not to be enlarged unless this is clearly intended. *See In re Estate of Cambest*, 756 A.2d 45, 52 (Pa. Super. 2000). The relevant Pennsylvania POA law is codified at sections 5601-

5611 of the PEF Code.  Section 5601 requires that certain provisions must be included in a POA.  In this regard, section 5601(c) requires that every POA must include a specific notice, at the beginning of the document, signed by the principal:

**(c) *Notice.***

All powers of attorney shall include the following notice in capital letters at the beginning of the power of attorney.  The notice shall be signed by the principal.  In the absence of a signed notice, upon a challenge to the authority of an agent to exercise a power under the power of attorney, the agent shall have the burden of demonstrating that the exercise of this authority is proper.

NOTICE

The purpose of this power of attorney is to give the person you designate (your "agent") broad powers to handle your property, which may include powers to sell or otherwise dispose of any real or personal property without advance notice to you or approval by you.

This power of attorney does not impose a duty on your agent to exercise granted powers, but when powers are exercised, your agent must use due care to act for your benefit and in accordance with this power of attorney.

Your agent may exercise the powers given here throughout your lifetime, even after you become incapacitated, unless you expressly limit the duration of these powers or you revoke these powers or a court acting on your behalf terminates your agent's authority.

Your agent must act in accordance with your reasonable expectations to the extent actually known by your agent and, otherwise, in your best interest, act in good faith and act only within the scope of authority granted by you in the power of attorney.

The Law permits you, if you choose, to grant broad authority to an agent under power of attorney, including the ability to give

away all of your property while you are alive or to substantially change how your property is distributed at your death.  Before signing this document, you should seek the advice of an attorney at law to make sure you understand it.

A court can take away the powers of your agent if it finds your agent is not acting properly.

The powers and duties of an agent under a power of attorney are explained more fully in 20 Pa.C.S.[A.] Ch. 56.

If there is anything about this form that you do not understand, you should ask a lawyer of your own choosing to explain it to you. I have read or had explained to me this notice and I understand its contents.

(Principal) (Date)

20 Pa.C.S.A. § 5601(c).

Additionally, section 5601(d) provides that an individual shall have no authority to act as an agent pursuant to a POA unless he or she has previously executed a written acknowledgement which is affixed to the POA:

**(d) *Acknowledgment executed by agent.***

An agent **shall have no authority to act** as agent under the power of attorney unless the agent has first executed and affixed to the power of attorney an acknowledgment in substantially the following form:

I, [agent], have read the attached power of attorney and am the person identified as the agent for the principal.  I hereby acknowledge that when I act as agent:

I shall act in accordance with the principal's reasonable expectations to the extent actually known by me and, otherwise, in the principal's best interest, act in good faith and act only within the scope of authority granted to me by the principal in the power of attorney.

(Agent) (Date)

20 Pa.C.S.A. § 5601(d) (emphasis added).

Our Supreme Court has ruled that, where a POA is not executed in conformity with the requirements of section 5601, the POA is void *ab initio* such that is legally non-existent. ***See In re Koepfinger***, 302 A.3d 630, 643 (Pa. 2023) (affirming the determination by the orphans' court that, because the POA was not executed as prescribed by subsection 5601(b)(3) of the PEF Code (requiring the signature of the principal to be acknowledged before a notary public), the POA was void *ab initio* and, therefore, legally non-existent).

Motee does not address the absence of the required section 5601(c) notice in the POAs. Instead, he limits his argument to his contention that, despite the absence of the required section 5601(d) agent acknowledgement, the POAs substantially complied with the content of section 5601(d). Motee points to the language in the POAs which states that "[m]y attorney-in-fact shall exercise powers in my best interest and for my welfare, as a fiduciary." Motee's Brief at 23 (*quoting* POAs, 5/16/19, at 1). Motee additionally points to the language of the POAs which states that "[a]ny party dealing with my attorney-in-fact hereunder may rely absolutely on the authority granted herein." ***Id***. (*quoting* POAs, 5/16/19, at 3). Finally, Motee points to the language in the POAs which states that, as "the attorney-in-fact named above, [I] hereby accept appointment as attorney-in-fact in accordance with the foregoing instrument." ***Id***. (*quoting* POAs, 5/16/19, at 5). Motee argues that, taken together, these statements within the POAs are substantially the same

as those appearing in section 5601(d). On this basis, Motee asserts that the POAs substantially complied with section 5601(d) since Sara, in essence, agreed to act within her principals' best interest and to be bound by her principals' reasonable expectations as set forth in the document.

Motee additionally argues that the equities support this conclusion because Sara and Bazzazan both testified that Sara was in charge of the family's affairs for many years, and that Bazzazan relied on Sara to handle the family's business in America while Bazzazan traveled back home to Iran. Motee maintains that the POAs were "only executed to formalize the arrangement they already had, since, as [Sara] testified, she needed it to be able to complete certain real estate transactions while the family was moving from California to Pennsylvania." *Id*. at 24. Motee argues that Bazzazan's testimony that she was unaware of the content of the POA she signed belies the fact that she was aware that Sara had already been acting in this capacity for years. According to Motee, "[i]t would be inequitable now to nullify th[e] POA[s] based on a technicality where the arrangement set forth in the document[s] had in fact been occurring for years." *Id*. at 25.

The trial court considered Motee's first issue and determined that it lacked merit. The court reasoned:

> Here, the POAs lack the required section 5601(c) notice signed by principals, Hossein and . . . Bazzazan, as well as the required section 5601(d) acknowledgement signed by the agent, Sara. Focusing on the latter, the lack of signed agent acknowledgment rendered Sara with "no authority to act." 20 Pa.C.S.A. § 5601(d). As such, the signatures on the Lease by

Sara, acting as agent under the POAs for the landlord Trust, are invalid.

Trial Court Judgment, 12/9/24, at 4 (unnecessary capitalization omitted).

Based on our review, we conclude that the trial court's findings are supported by substantial evidence. The POAs in question lack the requisite section 5601(c) notice, which was required to be set forth in capital letters at the beginning of the document and signed by the principals, Hossein and Bazzazan. *See* POAs, 5/16/19, at 1. As noted above, Motee does not acknowledge this omission, let alone make any argument regarding the fact that the POAs fail to conform to section 5601(c). The omission of the section 5601(c) notice is, alone, sufficient to render the POAs void *ab initio* and, therefore, legally non-existent. ***See In re Koepfinger***, 302 A.3d at 643.[4]

Moreover, the POAs lacked the requisite section 5601(d) agent acknowledgement. Contrary to Motee's arguments otherwise, the provisions to which he cites within the POAs are not substantially compliant with the requirements of section 5601(d). Importantly, the provisions in the acknowledgement form set forth in section 5601(d) consist of positive affirmations required ***to be made by the agent*** as to how he or she will act, or refrain from acting, while discharging the duties which fall within the scope

---

[4] Notably, although section 5601(c) provides that, in the absence of a signed notice and upon a challenge to the authority of the agent to exercise a power under the POA, the agent has the burden of demonstrating that the exercise of this authority is proper, Motee does not argue that Sara, as the agent, met this burden. *See* 20 Pa.C.S.A. § 5601(c).

- 11 -

of authority granted by the POA document. *See* 20 Pa.C.S.A. § 5601(d). Specifically, pursuant to the acknowledgment form, the agent must promise to act "in accordance with the principal's reasonable expectations to the extent actually known by me and, otherwise, in the principal's best interest, act in good faith and act only within the scope of authority granted to me by the principal in the power of attorney." *Id*. In the POAs in question, the only affirmation made by Sara was that she "hereby accept[s] appointment as attorney-in-fact in accordance with the foregoing instrument." POAs, 5/16/19, at 5. This statement falls woefully short of the various positive affirmations required by section 5601(d). Indeed, nowhere in the POAs does Sara acknowledge that she had even read the POA documents. *See id*.; *see also* 20 Pa.C.S.A. § 5601(d) (requiring the acknowledgment to state that "I, [agent], have read the attached power of attorney"). Notably, the remaining provisions of the POAs to which Motee directs our attention consist of powers granted by, and attestations made by, Bazzazan and Hossein, as principals. As such, they do not constitute positive affirmations required to be made by Sara, as the agent, pursuant to section 5601(d).

This, as we discern no error of law or abuse of discretion by the trial court in reaching its determination that the POAs in question were invalid and void *ab initio* because they lacked the requisite section 5601(c) notice and the section 5601(d) acknowledgment, we conclude that Motee's first issue merits no relief.

In his second issue, Motee challenges the trial court's determination he was not entitled to assume that Sara was Bazzazan's apparent agent.[5] Preliminarily, we must determine whether Motee preserved this issue for our review. It is axiomatic that issues not raised in the trial court are waived and cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a). Our review of the certified record does not demonstrate that Motee raised this issue prior to trial, at trial, or in his post-trial briefs. Moreover, Motee has not directed this Court to the place in the record where he preserved this issue for our review, as required by Pa.R.A.P. 2119(e). Instead, the record reflects that Motee raised the issue for the first time on appeal by including it in his Rule 1925(b) concise statement of errors complained of on appeal. *See Irwin Union Nat. Bank & Trust Co. v. Famous*, 4 A.3d 1099, 1104 (Pa. Super. 2010) (holding that an issue raised for the first time in a concise statement is waived). Accordingly, as Motee failed to raise this issue before the trial court, his second issue is waived.

In his third issue, Motee challenges the trial court's interpretation of section 5608(d) of the PEF Code, which provides as follows:

> ***Immunity.*** — A person who in good faith accepts a power of attorney without actual knowledge of any of the following may, without liability, rely upon the power of attorney as if the power

---

[5] In his brief, Motee indicated in the heading for his second issue that it involved the question of whether he made substantial improvements to the Lanark Property. *See* Motee's Brief at 25. However, in the discussion for his second issue, Motee argues that he should have been able to regard Sara as Bazzazan's apparent agent. *See id.* at 25-30.

- 13 -

of attorney and agent's authority were genuine, valid and still in effect and the agent had not exceeded and had properly exercised the authority that:

(1)    The power of attorney is void, invalid or terminated.

(2)    The purported agent's authority is void, invalid or terminated.

(3)    The agent is exceeding or improperly exercising the agent's authority.

20 Pa.C.S.A. § 5608(d).

Our Supreme Court has explained that,

[W]hile the wording of this provision is disjointed, the intent behind it is clear: subsection (d) immunizes a person from liability for reliance on a power of attorney and the exercise of the agent's authority pursuant to the power of attorney, except if she had actual knowledge that: (1) the power of attorney is void, invalid or terminated; (2) the purported agent's authority is void, invalid or terminated; or (3) the agent is exceeding or improperly exercising her authority. *Id.* § 5608(d). Therefore, section 5608 immunizes from liability a person who in good faith relies on a power of attorney, even if the power of attorney is deemed invalid or void.

*In re Koepfinger*, 302 A.3d at 642 (unnecessary capitalization omitted).

In *In re Koepfinger*, a father executed a POA naming his daughter as his agent. After the father claimed to have revoked the POA, the daughter, acting as agent under the POA and claiming ignorance of the purported revocation, placed her father's assets into an irrevocable trust, naming herself as trustee. The daughter then sought a declaratory judgment to have the trust determined valid on the basis that section 5608(d) permitted her, acting in good faith, to create the trust. The daughter further contended that section

- 14 -

5608(d) immunized her from liability, and that any harm caused to her father's financial affairs was the fault of the law firm that drafted the POA. The father countered that the POA was void *ab initio* because it was never signed before a notary, and that therefore the trust created by his daughter as agent under the POA was a nullity from its inception. The High Court held that the immunity provisions of section 5608(d) were inapplicable because the father did not seek to hold the daughter liable for creating the trust. ***See id***. at 642-43. The Court explained that that "[t]his case is about the validity of the trust, not [d]aughter's liability for creating it. The immunity from liability provided by [s]ection 5608 is irrelevant to the issue of the validity of the trust." ***Id***. Instead, the High Court explained, "[t]he foundational fact in the case is that the POA was void *ab initio*. It is self-evident that a trust purportedly created under the authority of a null POA is also a nullity. Daughter, as a purported agent under the ineffective POA, had no authority to act on behalf of the purported principal." ***Id***. at 643.

Motee argues that "[s]ection 5608(d) has a broader application than the one advanced by the trial court and by the [C]ourt in ***In re Koepfinger***." Motee's Brief at 44. Motee concedes that his own liability is not implicated in this matter, however, he nevertheless contends that the trial court failed to consider the applicability of the immunity provisions of section 5608(d) in situations that do not involve liability. Without reference to any legal authority, Motee baldly contends that "the implication of liability is not a

necessary prerequisite for the application of the statute, but rather a permitted circumstance under which immunity is stipulated." ***Id***. He argues that, under the terms of section 5608(d), a party may still rely on a power of attorney in good faith even in those situations that do not result in liability. On this basis, Motee asserts that the trial court erred by determining that the immunity provisions of section 5608(d)are inapplicable to this case.

The trial court considered Motee's third issue and determined that it lacked merit. The court reasoned:

> Motee's . . . contention is that even if Sara's authority under the POAs was nullified by the lack of a signed acknowledgement, his good faith reliance on Sara's purported authority triggered the "immunity" provision of [section] 5608(d), thus permitting him to enforce the Lease. . . . Based on th[e] language[ of section 5608(d)], Motee argues that he may enforce the Lease and option because he relied in good faith on Sara's authority as agent for the Trust under the POAs to execute the Lease, even if she exceeded or improperly exercised that authority.
>
> Motee's argument is unpersuasive for several reasons. First, Motee did not testify at trial. Therefore, there is simply no evidence of his purported good faith reliance. But[,] even if there was, the section 5608(d) "immunity" clause, by its very title, is not meant to sanitize otherwise defective transactions where an agent acted without authority; rather, it is a shield to protect an innocent person from liability when acting pursuant to a power of attorney that is later determined invalid. [***See***] ***In re Koepflinger***, 302 A.3d [at] 642-43 . . ..

> \* \* \* \*

> Like the situation in ***Koepflinger*** where the Supreme Court found that a trust created under a null power of attorney is also a nullity, Sara's lack of authority to act as agent under the POAs due to the absence of a signed agent acknowledgment rendered the Lease for the Lanark Property (and the option in the Lease) a nullity. And[,] more importantly, nobody is seeking to hold Sara

- 16 -

> or . . . Motee liable for anything; therefore, the immunity provision of section 5608 has no applicability and is irrelevant to the issue of the validity of the Lease.

Trial Court Judgment, 12/9/24, at 6-8 (unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in reaching its determination that the immunity provisions of section 5608(d) are inapplicable to the instant matter. As in *In re Koepflinger*, the central issue in this case was the validity of the Lease, not Sara's liability for creating it or signing it, or Motee's liability for entering it. *See In re Koepfinger*, 302 A.3d at 642-43. The immunity from liability provided by section 5608(d) was irrelevant to the issue of the validity of the Lease. *See id*. Moreover, as in *In re Koepfinger*, the foundational fact in this case is that the POAs executed by Hossein and Bazzazan were void *ab initio* and were therefore legal nullities. *See id*. at 643. Accordingly, the Lease purportedly created by Sara under the authority of the void POAs was also a nullity, as she, as the purported agent under the ineffective POAs, had no authority to act on behalf of her parents as the principals. *See id*. Thus, as section 5608(b) was irrelevant to the issues in this case, Motee's third issue merits no relief.

In his fourth issue, Motee challenges the trial court's determination that Bazzazan's testimony was credible. When this Court entertains an appeal originating from a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence. *See Triffin v. Dillabough*, 716 A.2d 605, 607 (Pa. 1998). Importantly, in a non-jury

- 17 -

trial, the judge sitting as factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. *See id*. "Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder." *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916 (Pa. Super. 2017). The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion. *See Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 686 (Pa. Super. 1998).

Motee contends that the trial court should not have credited Bazzazan's testimony because it was evasive, inconsistent, and/or intentionally false. Motee argues that her testimony did not deserve the level of credibility afforded to it by the trial court. In support, Motee asserts that: (1) at trial, Bazzazan denied signing a POA for Sara but later admitted her signature was on the document; (2) at her deposition, Bazzazan testified that Sara had told her about the Lease for the Lanark Property; however, at trial, she repeatedly denied this prior sworn testimony; (3) at trial, Bazzazan reluctantly agreed that her signature was on the settlement sheet for the sale of the Lanark Property; (4) the trial court had to prompt Bazzazan to admit her signature on the Trust; (5) Bazzazan testified that she could not remember her

husband's signature but then later was able to do so; (6) Bazzazan provided inconsistent or evasive testimony about providing documents to her attorney (documents she testified she had not seen or been provided); (7) when pressed about inconsistencies, Bazzazan testified that she was under pressure at her deposition and thus did not remember those answers; (8) on the second day of trial, Bazzazan claimed she had been unwell during the first day of trial; (9) Bazzazan testified the sale of the Beverly Hills property was only used to purchase one property; however, her counsel stipulated that the Trust held the three properties; (10) Bazzazan claimed that certain documents did not contain her signature and were fraudulent; however, her counsel confirmed to the trial court that Exhibits 1-9 had been admitted without a challenge to their authenticity, and that there were no claims of forgery at issue. *See* Motee's Brief at 31-32. Motee asserts that each of the above examples demonstrates the contradictory nature of Bazzazan's testimony, both in court and during her deposition. Motee maintains that Bazzazan clearly had a motive to present an alternate recitation of events and obscure facts relevant to this case, including her awareness that that Sara had previously handled her affairs and, in keeping with their arrangement, Bazzazan signed the POA document.

Based on our review, we conclude that the trial court's factual determinations are supported by competent evidence such that it could have reasonably reached those findings, and we are therefore bound by such

findings. *See Triffin*, 716 A.2d at 607. Moreover, as explained above, a judge sitting as factfinder is free to believe all, part, or none of the evidence, and assessments of credibility and conflicts in evidence are for the trial court to resolve. *See id*.; *see also Gutteridge*, 165 A.3d at 916. Here, the trial court judge, sitting as factfinder, had the ability to observe Bazzazan firsthand during the course of her trial testimony and to assess her demeanor and her responses to the questions posed to her. *See Oxford Tower Apartments, LP v. Frenchie's Hair Boutique*, 223 A.3d 626 (Pa. Super. 2020) (observing that "[t]he trier of fact has the unique opportunity to see and hear subtleties of answers and movements of witnesses and parties not viewable from the cold record").[6] Notably, Bazzazan does not speak English, and she therefore needed the assistance of a translator both at her deposition and at trial. As this Court is not permitted to reexamine the trial court's weight and credibility determinations on a cold record, or substitute our judgment for those of the trial court when sitting as factfinder, we decline Motee's invitation to reassess the credibility of Bazzazan's testimony. Thus, his fourth issue merits no relief.

In his fifth issue, Motee challenges the trial court's determination that the equitable exception to the statute of frauds did not apply in this case. The statute of frauds prohibits the creation of interests or estates in any land

---

[6] *See* Pa.R.A.P. 126(b) (providing that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

- 20 -

through a parol agreement. *See Brotman v. Brotman*, 46 A.2d 175, 177 (Pa. 1946). The obvious purpose of the statute of frauds is to prevent the assertion of verbal understandings, and to obviate the opportunity for fraud and perjury. *See id*. "It is not a mere rule of evidence. It is a declaration of public policy." *Id*. (citation omitted). As such, "[a] writing signed by the parties is required, and even courts of equity, though dispensing with the form, firmly demand the substance." *Id*.

Under the statute of frauds, a lease for more than three years must be in writing and signed by the lessor. *See* 33 PS. § 1. In the absence of these two requirements, the interest in the land is merely a tenancy at will. *See id*.; *see also Holland Furnace Co. v. Keystone Dehydrating Co.*, 30 A.2d 872, 874 (Pa. Super. 1943) (holding that the statute of frauds does not declare void or wholly invalidate oral leases exceeding three years, but it does shorten their terms by giving them only the force and effect of leases at will).

Furthermore, an option to purchase real estate is also subject to the statute of frauds and must be in writing. *See* 33 P.S. § 1; *see also Stevenson v. Titus*, 2 A.2d 853 (Pa. 1938) (holding that while the optionor must sign the writing, the optionee need not sign the writing, since it is not the party making or creating the interest in land). However, specific performance of an oral contract for the purchase of land may be ordered where it appears that continuous and exclusive possession of the subject property was taken under the oral contract *and* improvements were made by the buyer

not readily compensable in money. *See Concorde Invest., Inc. v. Gallagher*, 497 A.2d 637, 640 (Pa. Super. 1985); *see also Briggs v. Sackett*, 418 A.2d 586, 588 (Pa. Super. 1980) (holding that the statute of frauds prevents the entry of a decree of specific performance against the vendor under an oral contract unless it appears that continuous and exclusive possession was taken under the contract and improvements were made by the vendee not readily to be compensated in money, or other equitable considerations make it impossible to do justice save by specific performance); *see also Ridley Park Shopping Ctr, Inc. v. Sun Ray Drug Co.*, 180 A.2d 1, 3 (Pa. 1962) (removing lease from statute of frauds where lessee of shopping center assumed exclusive possession under a parol modification of original lease and made substantial permanent improvements without complaint or objection from lessor).

Motee concedes that the statute of frauds requires that a lease for a term of more than three years must be in writing and signed by the lessor, and that if the lease is lacking in either of these requirements, it is considered a tenancy at will. *See* Motee's Brief at 34. Nevertheless, he claims that the trial court should have determined that the equitable exception applied in this case because he made improvements to the Lanark Property. According to Motee, Sara testified at trial that: (1) she and Motee had been residing at the Lanark Property continuously since 2019, and had been renovating and remodeling the property since that time; (2) Sara used her degree in interior

design to make these improvements and renovations; (3) she and Motee have made any necessary repairs and/or upkeep needed, including plumbing and roofing; and (4) she and Motee have paid taxes of $10,000 to $11,000 annually since 2019. *See* Motee's Brief at 37. Motee claims that, based on Sara's testimony, the trial court erred in determining that he failed to present evidence that he substantially improved the Lanark Property.

Motee further concedes that he and Sara paid no rent for their tenancy at the Lanark Property. However, he claims that they "participated in family events in a way which proactively advanced its position." *Id*. at 39. According to Motee, he and Sara "paid with their time and efforts, which the trial court failed to recognize when balancing the equities." *Id*. Motee further argues that Bazzazan only objected to the tenancy after an undisclosed event with Sara, and after she and Motee had made significant improvements to the property.

The trial court considered Motee's fifth issue and determined that it lacked merit. The court reasoned:

> . . . [H]aving determined that Sara lacked the authority to execute the Lease for the Trust under the POAs, and absent an exception to the statute of frauds, the lack of valid signatures on the Lease by the landlord Trust renders the Lease, and the embedded option to purchase the Lanark Property, unenforceable and tantamount to a tenancy at will. [*See*] 33 P.S. § 1.
>
> * * * *
>
> Here, the equitable exception to the statute of frauds . . . does not apply because . . . Motee presented no evidence that he made substantial improvements to the Lanark Property during his

- 23 -

tenancy; moreover, Motee lived at the Lanark Property per the Lease for years without paying rent to the Trust. As such, the equities required to remove the Lease from the statute of frauds do not weigh in Motee's favor. And[,] even if the Lease could be saved by the equitable exception to the statute of frauds applicable to leases, the option to purchase the Lanark Property at paragraph [fourteen] of the Lease is, itself, also subject to the statute of frauds. ***Stevenson v. Titus***, ***supra***. There being no applicable exception to remove the option from the protections of the statute of frauds, and given the absence of a validly signed writing by the optionor, the option remains unenforceable.

Trial Court Judgment, 12/9/24, at 5-6 (unnecessary capitalization omitted).

Based on our review, we discern no error of law or abuse of discretion by the trial court in reaching its determination that Motee failed to establish that the equitable exception to the statute of frauds should apply in this case. Here, as previously discussed, the POAs were legally invalid and did not confer any authority to Sara to either draft or sign the Lease. Thus, the Lease was a nullity and the terms of the Lease, including the option to purchase the Lanark Property, were unenforceable. As such, Motee and Sara were merely tenants at will, without any enforceable option to purchase the Lanark Property.

Even assuming that Motee could establish an oral option to purchase the property, which is not borne out by the record, he failed to establish that he made improvements to the Lanark Property. While Sara vaguely testified to improvements and renovations, and to some unspecified roofing and plumbing repairs, she provided no testimony as to any particular improvement, renovation, or repair. Moreover, Motee presented no evidence

to the trial court that any such renovations or improvements had, in fact, been made, such as invoices or receipts establishing the nature, extent, and payments for such improvements. To be sure, Motee did not establish that he had had made $697,977.23 worth of improvements. Instead, the record reflects that he and Sara lived at this luxury residence, rent free, for several years without paying anything other than real estate taxes. Thus, even if Motee could have established an oral option to purchase the Lanark property, he failed to establish an equitable exception to the requirement under the statute of frauds that the option be included in an enforceable writing signed by the optionor.

In sum, as Motee and Sara were merely tenants at will at the Lanark Property, without any enforceable option to purchase the property, Motee's fifth issue merits no relief.

In his sixth and final issue, Motee contends that the trial court should not have applied an adverse inference based on his decision not to testify at trial. Where evidence which would properly be part of the case is within the control of the party whose interest it would naturally be to produce it, and without satisfactory explanation he fails to do so, an adverse inference may be drawn against that party. **See Haas v. Kasnot**, 92 A.2d 171, 173 (Pa. 1952). Indeed, a party's failure to testify at a civil trial raises an inference of fact that the party's testimony would have been adverse or unfavorable to him. **See Fitzpatrick v. Phila. Newspapers, Inc.**, 567 A.2d 684, 687 (Pa.

Super. 1989). The fact that the party was available to be called by either side does not bar the application of the inference, as it would if he were a non-party witness. **See id**. at 687-88.

Motee points out that, in her post-trial briefing, Bazzazan urged the trial court to apply an adverse inference based on Motee's failure to testify at trial. Motee concedes that "the trial court did not explicitly apply an adverse inference." Motee's Brief at 40. Nevertheless, he claims that, because the trial court ruled against him, it must have applied the inference. **See id**. In support, Motee points to the trial court's determination that he presented no evidence of improvements to the Lanark Property, and no evidence of his good faith reliance on Sara's authority to draft and sign the Lease. Motee asserts that, to the extent the trial court applied the adverse inference, it abused its discretion because Motee was available to Bazzazan as a witness at all times, and he did not prevent her from calling him as a witness. Motee further argues that his wife testified regarding all dispositive issues in the case, including the signing of the Lease and improvements to the property. Motee submits that Bazzazan was "not entitled to an inference simply because the most direct evidence or evidence anticipated was not presented at the time of trial." Motee's Brief at 43.

Based on our review, the record discloses no evidence that the trial court did, in fact, apply an adverse inference based on Motee's decision not to testify at trial. In its declaratory judgment denying relief, the trial court made no

mention of Bazzazan's request to apply the adverse inference, nor did it indicate in any manner that it did so. **See** Trial Court Judgment, 12/9/24, at 1-8. Indeed, Motee concedes that "the trial court did not explicitly apply an adverse inference." Motee's Brief at 40. The mere fact that the trial court did not grant the requested declaratory relief does not permit Motee, or this Court, to speculate that such an inference was, in fact, utilized.[7] Thus, without any indication in the record that such an inference was applied in this matter, we conclude that Motee's sixth issue merits no relief.

Having found no merit to any of Motee's issues, we affirm the judgment of the trial court denying the requested declaratory relief.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2025

---

[7] Even if the trial court had applied the adverse inference, we would have concluded that it was entitled to do so, since Motee was the only person who could testify as to whether he acted in good faith pursuant to a reasonable belief that Sara was authorized to draft and sign the Lease, and because any evidence of the extensive and costly improvements that Motee claimed he made to the Lanark Property was within his control, it would naturally be in his interest to produce it. **See Haas**, 92 A.2d at 173