DELAWARE COUNTY LODGE NO. 27, FRATERNAL ORDER OF POLICE, Appellant

v.

TOWNSHIP OF TINICUM.

Commonwealth Court of Pennsylvania.

Argued Feb. 27, 2006.

Decided June 13, 2006.

Publication Ordered Oct. 2, 2006.

S. Stanton Miller, Jr., Media, for appellant.

Scott E. Blissman, Philadelphia, for appellee.

BEFORE: McGINLEY, Judge and SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Delaware County Lodge No. 27, Fraternal Order of Police (FOP) appeals from an order of the Court of Common Pleas of Delaware County that denied the FOP's petition to vacate a grievance arbi-

tration award under "Act 111."[1] The Arbitrator denied a grievance filed by the FOP and affirmed the discharge of Police Officer Michael Evans by the Township of Tinicum (Township).

The FOP states the questions as whether Evans as a public employee was entitled to pre-termination due process, including adequate notice of the charges, notice of the underlying factual basis and a pre-termination hearing; whether Evans was denied procedural due process because the Arbitrator failed to limit the Township's evidence to the statement of charges; and whether he exceeded his authority and violated Evans' rights by shifting the burden to Evans through an adverse inference against him because he did not testify. The FOP also questions whether the Arbitrator permitted patent irregularities to occur.

The Arbitrator found that Evans was first hired in June 1998, and he became a full-time officer in September. Robert T. Lythgoe, Jr., the Township's Chief of Police, first heard rumors in October 1999 that Evans was engaged in an extramarital relationship with Karen Bingham, who lived in the Township. In February and April of 2000 a male friend of Bingham filed written complaints against Evans; the second was for making an obscene gesture while driving a car in uniform, which resulted in a two-day suspension. Evans, who lived outside the Township in Sharon Hill, filed a harassment complaint against Bingham with the Sharon Hill Police Department in May 2001, based on unwanted telephone calls.

On August 15, 2001, Bingham came to the police station and tried to gain entry; she later followed Evans while he was on patrol until he met Sergeant Michael Burns. The officers contacted the Chief, who directed them to come to his home. They were outside talking when Bingham drove by; the Chief asked her to stop and she joined the conversation. Bingham said that Evans told her that he would leave his wife for her. The Chief told both of them that it was time for the relationship to end, and he orally ordered Evans to have no contact with Bingham, whether on or off duty. Later that night Bingham was subject to an involuntary mental health commitment, and on August 20, 2001 Bingham's sister telephoned the Chief stating that Evans was calling Bingham at the crisis unit where she was a patient. The Chief investigated the matter.

On October 2, 2001, Bingham was waiting outside with several of her relatives when Evans, his wife and children returned home from a family outing. A physical altercation developed involving Evans, his wife, Bingham and some of her relatives; Bingham sustained injury and bruises that she attributed to Evans. Sharon Hill Police responded and restored order. Bingham filed a harassment complaint against Evans with the Township police, and on October 4, 2001 the Chief conducted Bingham's interview, which was taped and transcribed. The Chief asked Bingham if Evans had been to her house or initiated contact with her since August 15; she said that he had been to her home 10 to 12 times since then and had called her at home and visited her at work. The Chief received a written report from Evans on October 17 and in the Chief's interview with Evans he stated that he had a love/sex addiction with Bingham and that he was receiving professional help.

---

1. The Act commonly known as Act 111, Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1– 217.10.

By letter dated October 12, 2001, the Chief placed Evans on paid administrative leave and directed that he undergo an independent psychological evaluation to determine if he was mentally fit for his duties. A psychologist examined Evans on October 18 and thereafter reported that he appeared to be free of psychological abnormalities. On November 19 the Chief sent a "Loudermill Notice" to Evans stating that he might be subject to discipline up to and including discharge; the purpose was to provide notice of the potential disciplinary action, to explain evidence obtained in the investigation and to permit Evans an opportunity to offer any and all information that might cause the Chief to reconsider.[2]

Chief Lythgoe received a letter from counsel for the FOP stating that Evans was unable to provide any further statement without an exact transcript of Bingham's interview and requesting copies of any other interviews, statements or police reports from the investigation. The Township declined to provide all investigatory materials, and Evans declined to provide any further information. On January 21, 2002, the Chief met with the Board of Commissioners (Board), and they voted to terminate Evans. A termination notice was sent January 22 dismissing Evans for "[i]nefficiency, neglect, intemperance, disobedience of orders and/or conduct unbe-

coming an officer," Ex. J–3; R.R. 77a, citing Section 644(4) of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* added by Section 20 of the Act of May 27, 1949, P.L. 1955, 53 P.S. § 55644(4).

Evans filed a grievance challenging the legality and legitimacy of the termination. At the first hearing on July 23, 2002, the Arbitrator directed that the transcript of Bingham's interview and other investigatory materials be given to Evans. The Arbitrator stated the issues as whether the Township had just cause to dismiss Evans and, if not, what is the proper remedy and whether Evans engaged in conduct that would merit dismissal under 53 P.S. § 55644(4) and, if not, what is the proper remedy. Evans did not testify.

The Arbitrator first addressed the FOP's procedural claims that Evans was entitled to a "full-blown" due process hearing before the Board prior to his termination and that he was deprived of a fair opportunity to respond because the Township refused to provide access to statements relied on by the Chief in making his decision, based on its reading of *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and *Pavonarius v. City of Allentown,* 157 Pa.Cmwlth. 116, 629 A.2d 204 (1993). The Arbitrator did not consider *Loudermill* to mandate a pre-termination

---

**2.** The notice from the Chief stated in part:

The underlying events for this potential action involves your relationship with a Karen BINGHAM, as well as your violation of direct orders from me that you no longer have any contact with Ms. BINGHAM. As you know, in April of 2000, I ordered you to have no further contact with Ms. BINGHAM while you were on duty. In addition, in August of 2001, I ordered you to cease all contact with Ms. BINGHAM, whether by phone or in person, on duty or off duty. Ex. T–5; R.R. 84a. The notice then described the events of October 2, 2001, stating that the

impetus for it apparently was the fact that Evans indicated to Bingham that he was going to leave his wife and move in with her. Also, the Chief observed numerous bruises when he interviewed Bingham on October 4, and Evans admitted grabbing her and swinging her into a railing in the statement of October 17. The notice stated that Evans now had the opportunity to provide a written statement outlining any and all information that might cause the Chief to reconsider recommending disciplinary action or to modify the contemplated action. *Id.* at 84a–85a.

evidentiary hearing. He concluded that the notice sent to Evans complied with minimum due process requirements established in *Loudermill:* Evans was advised that he was in jeopardy of being dismissed and provided with reasons for the potential discipline and an opportunity to tell his side of the story. Further, in *Pavonarius* the Court held that Section 4408 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 39408, and Section 553 of the Local Agency Law, 2 Pa.C.S. § 553, provided a full-blown adversarial hearing before dismissal; however, the present matter was covered by provisions of The First Class Township Code, which are different.

The Arbitrator rejected Evans' claim of lack of a fair opportunity to respond to the Loudermill Notice, reasoning that it put him on notice of possible disciplinary action and explained the events and basis for the potential discipline, acknowledging Evans' October 17 statement. The Township had no obligation to turn over the Bingham transcript while it was still investigating. At the first hearing, the Arbitrator directed the Township to produce it immediately, and he offered to postpone the hearings to give the FOP more time to review but the offer was declined. The FOP had the transcript for 105 days before it had to put on its case. Evans could have subpoenaed Bingham, he could have asked questions of the Chief regarding the interview and he could have taken the stand himself but chose to do none of those things. The Arbitrator stated that any prejudice Evans may have suffered initially was remedied at the post-termination hearings.

On the substantive issues, the Arbitrator stated that he would sustain the grievance if he looked solely at the contact on October 2, 2001, when Bingham was the aggressor and trespassed at Evans' home and assaulted him and he was defending his family. However, he concluded based upon the evidence presented that Bingham came to the house not because Evans refused to have contact with her but because there was repeated contact with her after the August 2001 order. The Arbitrator had a healthy degree of skepticism regarding Bingham's statement, but the fact that Evans did not testify to rebut any of her representations made it fair for the Arbitrator as the ultimate fact finder to draw an adverse inference from Evans' silence. Testimony of Officers Ralph Slatten and Walter M. Davis, pursuant to subpoena, supported the finding that Evans had contact with Bingham after August 15. The Arbitrator decided that he should not interfere with the exercise of the Board's discretion absent discipline that was arbitrary, discriminatory or an abuse of discretion. Evans presented no evidence of such, or of extenuating or mitigating circumstances.

■ The trial court rejected the FOP's arguments regarding pre-termination procedures and the scope of evidence.[3] However, the trial court stated that the Arbitrator's award was not clear as to the burden of proof, and it remanded for clarification. On remand the Arbitrator stated that the burden of proof was on the Township to establish just cause to

---

**3.** The trial court noted that judicial review of a grievance arbitration award is in the nature of narrow certiorari, which limits a court to considering only issues regarding (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) a deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt),* 540 Pa. 66, 656 A.2d 83 (1995). This Court's review is also narrow certiorari pursuant to *Betancourt.* Mere error of law is insufficient to warrant reversal under narrow certiorari review. *Id.*

dismiss and that dismissal was proper under the First Class Township Code. He cited to various statements in the award indicating that he placed the burden correctly, and he denied shifting it although he had authority to make an adverse inference based upon Evans' silence. Moreover, the penalty was not excessive or unreasonable and the Township did not have to justify it. Also Evans was allowed an opportunity to present evidence of extenuating or mitigating circumstances, but that did not constitute shifting the burden. The trial court accepted these clarifications and in a second order denied the FOP's petition.

The FOP renews its contention that Evans was denied pre-termination due process because he was denied a full-blown evidentiary hearing as well as access to all information that he requested. In *Loudermill* the Supreme Court stated: "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487. The availability of post-termination procedures does not obviate pre-termination due process rights. The FOP disagrees that the *Pavonarius* requirement for a full hearing before termination applies only to cities of the Third Class. The Court there quoted Section 553 of the Local Agency Law, which provides: "No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard." The FOP further contends that the Arbitrator confused pre-termination and post-termination procedures when he stated that any prejudice Evans may have suffered by not having Bingham's statement initially was cured in the hearings and noted that Evans did not request a pre-termination hearing.

In Part D of its Argument the FOP maintains that the notice of charges provided to Evans was inadequate. The Court has held that a written statement of charges that must be furnished to a police officer within five days of filing must be sufficient to fully advise the person of the charges against him as well as the time when his conduct was in question. *Danner v. Bristol Township Civil Service Commission,* 64 Pa.Cmwlth. 470, 440 A.2d 702 (1982). In *Cerceo v. Borough of Darby,* 3 Pa.Cmwlth. 174, 281 A.2d 251 (1971), police officers were terminated without being provided a statutorily required written statement of charges. The Court held that proper and timely notice are aspects of due process in administrative proceedings and that withholding these rights, or a portion of them, invalidates adjudications. The FOP asserts that a fair reading of the Loudermill Notice and the termination notice is that the sole reason for the disciplinary action was the October 2, 2001 incident, but the Arbitrator stated that Evans did nothing wrong then.

■ The Court rejects the FOP's characterization of *Loudermill* and of *Pavonarius.* In *Loudermill* the Supreme Court clearly stated:

[T]he pretermination "hearing," though necessary, need not be elaborate . . . .

. . . Here, the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action . . . .

. . . The opportunity to present reasons, either in person or in writing, why

proposed action should not be taken is a fundamental due process requirement. *Id.,* 470 U.S. at 545–546, 105 S.Ct. 1487. This description of a far from full-blown evidentiary hearing immediately preceded the statement of what a public employee is entitled to that is quoted by the FOP above. As the Township argues, in *Pavonarius* the Court applied Section 4408 of The Third Class City Code, which provides for suspension without process but also specifies that civil service employees may be discharged by city council only after a hearing before council at which the employees may be represented by counsel. No such provision applies here.

■ The Township refers to *Jaruszewicz v. Department of Environmental Resources,* 167 Pa.Cmwlth. 582, 648 A.2d 1285 (1994), which noted the Court's statement in *Pavonarius* that a meeting with the employer or a written notice sent by the employer setting forth the reasons for the employee's termination and requesting her to respond in writing is sufficient. The Loudermill Notice in the present case likewise is sufficient. The notice stated that the underlying events involved Evans' relationship with Bingham and violation of direct orders for Evans not to have contact with her. The evidence included Bingham's October 4, 2001 statement to Chief Lythgoe and Evans' own October 17 statement. The FOP has never cited authority for the proposition that the "explanation of the employer's evidence" under *Loudermill* entitles the employee to complete access to the employer's investigatory file, and the Court has found no such authority. In addition, the Loudermill Notice satisfied notice requirements. Evans was advised of the charges of violating the orders not to have contact with Bingham, and he knew when his conduct was questioned. The pre-termination procedures therefore were adequate.

■ Next the FOP contends that the Arbitrator's authority was limited to resolution of the issues presented by the grievance. Attached to the grievance was a copy of the notice of termination, which the FOP states was intended to provide the factual basis for the charges. The notice of termination stated that the underlying facts were as stated in the Loudermill Notice. During the hearing, the Arbitrator admitted evidence of events not listed in the Loudermill Notice, including such matters as the two complaints from 2000 and the discipline imposed then and the May 2001 harassment complaints. These events went beyond the events of October 2, 2001, which was the only incident specified in the notice.

The Township responds, and the Court agrees, that the FOP's position is based upon an incorrect assertion that the Loudermill Notice must be construed narrowly to encompass only the October 2, 2001 incident. As pointed out by the Township and as quoted above, *see* n1, the notice stated the underlying events, in other words a course of conduct rather than one specific incident. The Arbitrator expressly found that Bingham went to Evans' house on October 2 because of repeated contact he had with her after the August 15 order to cease any contact. Because the notice encompassed a course of conduct, the Arbitrator did not exceed his authority in receiving evidence as to the totality of Evan's relationship, his violation of the Chief's order and the reasons for the October 2 incident.

The FOP argues as well that the Arbitrator shifted the burden of proof by stating as reasons for denying the grievance that Evans did not subpoena Bingham to testify and that Evans did not testify and therefore was deemed not to contradict hearsay and other evidence. Even after remand from the trial court the Arbitrator

still stated in his clarification that because the evidentiary hearing was labor arbitration and not a criminal trial, "it was within the scope of my authority to make an adverse inference from Officer Evans' silence with respect to the Bingham transcript." R.R. 194a. On the issue of penalty, the Arbitrator assertedly placed the burden on Evans to show that termination was not justified. No Township commissioner or official gave evidence concerning his service record. The Arbitrator concluded that the burden to justify the penalty would shift to the Township only if the penalty were excessive or unreasonable.

■ In response the Township first asserts that the FOP waived this issue by not briefing it to the trial court, relying upon Pa. R.A.P. 302(a) (issues not raised in lower court are waived and cannot be raised for the first time on appeal). Assuming that the issue is not waived, the Township responds that the context of the Arbitrator's statements regarding Evans' silence is that once the Arbitrator credited Chief Lythgoe, who believed Bingham, the Arbitrator could then cite the lack of evidence from Evans or the FOP to bolster his findings. As for penalty, the Arbitrator properly considered whether the award was excessive or unreasonable. On this point he could consider the FOP's failure to present evidence or to argue that the discipline was arbitrary, discriminatory or an abuse of discretion.

■ Assuming that the trial court's considering this issue and remanding and disposing of it preserved the issue for review, the Court rejects the contention that the Arbitrator impermissibly shifted the burden. The burden was on the Township to show just cause for discipline for "disobedience of orders" under Section 644(4) of The First Class Township Code, which it did. As for the penalty, the Arbitrator was well within his authority in concluding

that the serious and ongoing infractions committed by Evans merited his dismissal, especially in the absence any mitigation. Reasonable adverse inferences on these points based on Evans' failure to testify did not impermissibly shift the burden of proof. A party's failure to testify in a civil proceeding raises an inference that the testimony would be unfavorable to him, even though he was available to either side. *Fitzpatrick v. Philadelphia Newspapers, Inc.*, 389 Pa.Super. 438, 567 A.2d 684 (1989). The order of the trial court is therefore affirmed.

### ORDER

AND NOW, this 13th day of June, 2006, the order of the Court of Common Pleas of Delaware County is affirmed.