IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Minersville Borough          :
                                  :
          v.             : No. 1215 C.D. 2023
                                  : Submitted: August 8, 2025
Minersville Police Officers'  :
Association,              :
                                  :
               Appellant  :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE MATTHEW S. WOLF, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                       FILED: January 9, 2026

Minersville Borough Police Officers' Association (the Union) appeals from the July 7, 2023 Order of the Schuylkill County Court of Common Pleas (hereinafter referred to as the same or as the trial court), which vacated the arbitration Award issued by Larry Cheskawich (Arbitrator). The Arbitrator concluded that Minersville Borough (the Borough) lacked just cause to terminate Officer Harry Brown (Grievant) for using excessive force while affecting the arrest of David Plappert. The Arbitrator instead expunged Grievant's termination from his record and reinstated Grievant's employment subject to a long-term disciplinary suspension as well as a Last-Chance Agreement.

On appeal, the trial court reasoned that the Union was collaterally estopped from litigating the "just cause" issue because Grievant had unsuccessfully

asserted that the Borough lacked just cause for his termination in a parallel workers' compensation claim – even though the Arbitrator rendered his award *before* the issuance of the workers' compensation judge's (WCJ) decision. Before this Court, the Union primarily asserts that the trial court erred by retroactively applying the doctrine of collateral estoppel. We agree and, therefore, reverse and remand with instructions.

## I. Background

Without belaboring the considerable and disturbing factual background in this matter, Grievant, a Borough police officer, was on patrol with Officer Richard Clink on February 2, 2022, when they initiated a traffic stop involving Plappert. Upon discerning that Plappert had an outstanding warrant against him for missing a court appearance, Grievant and Clink began to effectuate his arrest. The arrest did not go smoothly. Grievant obtained custody by delivering numerous blows to Plappert's head with Grievant's closed fists and elbows, driving Plappert's head into the pavement, and by using pepper spray and numerous TASER deployments. Throughout the altercation, Plappert requested that Grievant and Clink handcuff him. Plappert was ultimately "life-flighted" to a nearby hospital for injuries he sustained during his encounter with Grievant and Clink, including the avulsion or loss of multiple teeth, a hematoma behind the right eye as well as bruises to the right eye, a swollen left eye, and lacerations.[1]

Thereafter, the Borough's Chief of Police, Michael Combs, conducted a use of force investigation regarding the incident, ultimately recommending that the Borough terminate Grievant for "neglect or violation of official duty and conduct

---

[1] The criminal charges against Plappert were later dropped. *See* Trial Court's Op., 7/7/23, at 2.

2

unbecoming of an officer." Trial Court's Op., 7/7/23, at 2. The Borough's Council accepted the recommendation and terminated Grievant's employment on March 8, 2022. Eventually, the matter proceeded to binding grievance arbitration to resolve a single issue: "Whether just cause exists to terminate [Grievant]? If not, what shall the remedy be?" Arbitrator's Award, 12/28/22, at 5.

The Arbitrator issued an extensive decision dated December 28, 2022. For our purposes, however, it is sufficient to note that while the Arbitrator did not find Grievant's report to the Borough to be truthful in light of video evidence of the altercation, his otherwise clean disciplinary record – in tandem with the Borough's ignorance as to Grievant's use of force trainings – warranted modification of his discipline. Arbitrator's Award at 50-51. Likewise, although the Borough called Grievant as a witness on cross-examination, *id*. at 25, the Union objected. The Union explained that Grievant was invoking his Fifth and Fourteenth Amendment rights[2] against self-incrimination because this matter had been referred for investigation to the Schuylkill County District Attorney's Office, the Office of the Attorney General, and even Federal authorities. *Id*. at 25 n.9. The Arbitrator accepted this explanation,

---

[2] The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As this Court has explained:

> It is indisputable that the Fifth Amendment privilege against self-incrimination is applicable to the States via the Fourteenth Amendment, and that it applies to protect an individual not only from being compelled to testify against himself in a criminal prosecution, but also privileges him not to answer official questions in any proceeding, criminal or civil, where the answer might incriminate him in future criminal proceedings. *Leftkowitz v. Turley,* 414 U.S. 70, 77 [ (1973) ].

*City of Philadelphia v. Kenny,* 369 A.2d 1343, 1347 (Pa.Cmwlth.), *cert. denied,* 434 U.S. 923 (1977).

sustained the Union's objection, *id*., and later declined to apply any resulting adverse inference against the Union because of Grievant's refusal to testify.[3] *Id*. at 45-46.

The Arbitrator therefore awarded the following relief:

1. The grievance is denied in part and sustained in part.

2. The termination of [] Grievant is expunged from his record, and it is replaced with a conversion to a long-term disciplinary suspension for excessive use of force, and submitting a false report, effective beginning with the [Borough's] vote of March 8, 2022 ending and including the date of this Award, December 28, 2022.

3. Said suspension is without pay, seniority, benefits, or other emoluments, except as referenced [in] the March 10 termination letter[] regarding benefits.

4. Upon reinstatement, []Grievant is to be placed on a Last-Chance Agreement (LCA), beginning his first day of return to employment, extending one (1) calendar year, regarding any violation pertaining to the [Borough's] Use of Force Policy and any resultant instance of excessive use of force/complete, detailed reporting.

5. As soon as practical upon reinstatement, []Grievant is to be afforded training in defensive tactics, use of force and remedial training in the [Borough's] Use of Force and Taser Policies, proof of such training to be documented.
6. I will retain jurisdiction for forty-five (45) days from the date of this Award for the sole purpose of resolving any dispute over the remedy.

---

[3] "[W]hile a defendant in a civil case may invoke the privilege and it may not be used against him in any way in a subsequent criminal prosecution, the court in the civil case may draw any adverse inference which is reasonable from the assertion of the privilege." *Kenny*, 369 A.2d at 1349; *see also Moore v. City of Philadelphia*, 571 A.2d 518, 524-25 (Pa. Cmwlth. 1990) ("Pennsylvania Courts have followed the rule of law . . . that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.").

Arbitrator's Award at 52. The Borough filed a timely Petition to Vacate the Award in the trial court on January 7, 2023, which subsequently heard oral argument on the matter on April 13, 2023.

Pertinent now, on March 14, 2022, Grievant also filed a claim for benefits under the Workers' Compensation Act[4] for injuries sustained to his wrist during the arrest of Plappert. In a decision circulated on March 17, *2023*, the WCJ denied Grievant's claim petition because Grievant did not carry his burden of proof in establishing that he suffered a work injury. Reproduced Record (R.R.) at 138a-49a.[5] However, the WCJ added: Grievant's "failure to follow [the Borough's] use of force policy, engaging in conduct unbecoming [of] an officer, and falsifying a report, were grounds for termination from employment and would bar [Grievant] from any [c]laim for wage loss benefits if the claim petition had been granted." R.R. at 148a. Thus, while the Arbitrator's Award was issued during the pendency of Grievant's workers' compensation claim, the WCJ's decision was rendered prior to the trial court's consideration of the Petition to Vacate.

In an opinion and order dated July 7, 2023, the trial court sought to resolve three issues: (1) whether the Union was collaterally estopped from challenging the Borough's Petition to Vacate given the WCJ's decision; (2) whether the Borough's due process rights were violated; and (3) whether the Arbitrator exceeded his authority. Trial Court's Op. at 3. Recognizing that pursuing benefits under the Workers' Compensation Act is typically an exclusive remedy, the trial

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

[5] We will correct Grievant's improper pagination of the Reproduced Record. *See* Pa. R.A.P. 2173 ("[T]he reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc.").

court noted that a claimant's decision to proceed under the Workers' Compensation Act results in the application of common law doctrines – like collateral estoppel – in civil actions once a final determination is rendered.[6] *Id*. at 7 (citing *Grant v. GAF Corp.*, 608 A.2d 1047, 1059 (Pa. Super. 1992)).

The trial court then concluded that the necessary elements were met for the WCJ's determination to collaterally estop the Union's defense of the Arbitrator's award, principally because the WCJ considered identical issues to the underlying litigation, *i.e.*, whether Grievant's termination was unjust and whether Grievant used excessive force. Trial Court's Op. at 8. Concerning the timing of the instant litigation and the litigation before the WCJ, the trial court observed:

> Although the December 28, 2022 Arbitration Award preceded [the WCJ's] decision issued on March 17, 2023, the workers' compensation matter commenced prior to the grievance where [Grievant] filed his claim petition on March 14, 2022 . . . . The arbitration hearing took place on July 28, 2022. [The Borough] timely appealed the December 28, 2022 Arbitration Award by filing the subject Petition to Vacate [] on January 27, 2023. [Grievant] raised the collateral estoppel issue p[ertinant] to this appeal at oral argument before the undersigned. [Grievant] did not have the opportunity to assert collateral estoppel before or during the arbitration proceeding because [the WCJ] had not yet rendered her decision in the Workers' Compensation matter.

*Id*. at 11-12 n.3. The trial court thus found that both the Union and Grievant were foreclosed from relitigating the issue of Grievant's termination following the WCJ's

---

[6] The trial court partly reached this conclusion by distinguishing between the scope and standard of review in Act 111 arbitration matters. Trial Court's Op. at 6-7. Although the scope of judicial review is limited to narrow *certiorari*, courts exercise a plenary standard of review over purely legal questions. The trial court reasoned that the operation of the collateral estoppel doctrine implicates procedural due process, but is a purely legal question, such that it deemed the issue to be within the scope of narrow *certiorari* which was owed plenary review. *Id*. at 7.

decision as the same had effectively rendered any conflicting arguments moot. *Id*. at 11-12.

In the alternative, relying on *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259 (Pa. 2009), the trial court determined that Grievant's refusal to testify before the Arbitrator had frustrated the regularity of the proceedings thereby warranting vacatur. Trial Court's Op. at 12-16. The trial court reasoned that Grievant's testimony was "vitally important" to both the Borough's case-in-chief and the outcome of the Award. Likewise, the Arbitrator's failure to apply an adverse inference to Grievant's refusal to testify therefore "hampered [the Arbitrator's] ability to reach a proper [A]ward." Trial Court's Op. at 14-15. However, as it concerned the final issue, the trial court concluded that the Arbitrator did not exceed his authority in reinstating Grievant. *Id*. at 16.

Further complicating matters is the tortured procedural history that followed the trial court's decision. While the trial court rendered its order on July 7, 2023, the Union did not file a notice of appeal until November 30, 2023 – well past the 30-day deadline under Pennsylvania Rule of Appellate Procedure (Rule or Pa.R.A.P.) 903.[7] However, the record does contain a "Petition for Review" which is styled as having been filed in the Commonwealth Court, even though the document was filed in the trial court on August 4, 2023. *See* Original Record (O.R.) at Item No. 11. Having observed this defect upon filing, this Court ordered the parties to address the timeliness of the Union's appeal in a memorandum and order filed January 19, 2024. *See* Commonwealth Court 1/19/24 Order (*Per Curiam*). We later determined that this order had been improvidently entered, however, and

---

[7] Pa. R.A.P. 903 provides: "Except as otherwise prescribed by the [R]ule, the notice of appeal required by [R]ule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."

deemed the August 4, 2023 "Petition for Review" to be the Union's timely Notice of Appeal. *See* Commonwealth Court 3/15/24 Order (*Per Curiam*).

Yet, on December 13, 2023, in response to the November 30, 2023 Notice of Appeal, the trial court filed a Rule 1925(b) order directing the Union to file a Concise Statement of Matters Complained of on Appeal (Statement). In lieu of a Statement, the Union appended the earlier "Petition for Review" that it had filed in the trial court to a letter explaining that the same would identify the matters complained of on appeal. O.R. at Item No. 14. The "Petition for Review" observed that the trial court applied the doctrine of collateral estoppel, notwithstanding that the Arbitrator's Award preceded the WCJ's decision, and alternatively concluded that the Arbitrator had frustrated the Borough's due process rights; the Union thus requested reversal of the trial court's order. *Id*. In its Rule 1925(a) Opinion filed on January 8, 2024, the trial court opined that even if we were to construe the "Petition for Review" as the Union's Statement, that the Union failed to identify any supposed errors in the trial court's decision or otherwise *complain* of anything. Rather, the Union simply *described* the trial court's decision. The trial court therefore advised that the Union had waived all issues for appellate review under Rule 1925(b)(4)(ii). Trial Court's Rule 1925(a) Op. at 1-3 (citing *Commonwealth v. Dowling,* 778 A.2d 683, 686-87 (Pa Super. 2001); *Commonwealth v. Lemon*, 804 A.2d 34, 37 (2002)).

As a final matter, in our February 7, 2023 order, we directed the parties to address the effect of the Union's possible issue waiver. *See* Commonwealth Court 2/7/24 Order. Thus, both the procedural and meritorious issues presented by this appeal are now before this Court.

8

## II. Issues

As a threshold matter, we must first determine whether the Union has waived all issues for appellate review for failure to file a competent Rule 1925(b) Statement in the trial court. Concerning the merits, the Union asserts that the trial court erred by: (1) permitting the WCJ's Decision to retroactively estop its defense of the Petition to Vacate; and, alternatively, (2) by concluding that the Arbitrator had frustrated the Borough's due process rights after sustaining the Union's objection to introducing Grievant's testimony.

## III. Discussion

Preliminarily, "the scope of review applicable to Act 111 grievance arbitration appeals is settled: narrow *certiorari* review, which allows the [C]ourt to inquire into only four areas, obtains." *Town of McCandless v. McCandless Police Officers Association*, 901 A.2d 991, 997 (Pa. 2006). The four areas our inquiry may enter upon include: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his authority; and (4) whether there has been a deprivation of constitutional rights. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 768 A.2d 291, 295 (Pa. 2001).

> [I]f the question of arbitrability turns upon a pure question of law or upon the application of law to undisputed facts, appellate review is plenary; but if arbitrability depends upon fact-finding or an interpretation of the [collective bargaining agreement], 'the extreme deference standard' governing Act 111 awards controls. In the latter instance the court is bound by the arbitrator's determination, even though it may be manifestly unreasonable.

*Town of McCandless*, 901 A.2d at 995.

9

## A. Issue Waiver

Initially, the Union expresses that it is unclear whether Rule 1925 applies in this situation, given, what it believes, is a pivotal distinction: in this instance, the Schuylkill County Court of Common Pleas was exercising *appellate* review over the Borough's Petition to Vacate. *See* Union's Brief at 23 ("At the outset it must be noted that the Schuylkill County Court of Common Pleas **was not** the trial court in this matter. The Schuylkill County Court of Common Pleas sat in an appellate capacity . . . .") (emphasis in original). In other words, the Court of Common Pleas was not a trial court empowered to issue a Rule 1925(b) order in this matter. Because the Union believes that Rule 1925 applies only to "first level" appeals, *id*., the Union would have us treat the trial court's Rule 1925(b) order as void *ab initio*. Even so, the Union believes the "Petition for Review" it filed sufficiently apprised the trial court of the issues it intended to raise on appeal before this Court. *Id*. at 23-24.

The Borough rejoins that the Union's distinction between trial courts would frustrate our precedent. Concerning the Union's latter argument, the Borough responds that the Union's defective "Petition for Review" nevertheless failed to sufficiently identify the issues the Union intended to raise on appeal as required by Rule 1925(b)(4)(ii). Borough's Brief at 18-19.

While it is equal parts pedantic and clever, the Union's first argument is of no moment. Rule 102 defines "Trial Court" as: "The court from which an appeal is first taken *or to be taken*." Pa.R.A.P. 102 (emphasis added). Because the Schuylkill County Court of Common Pleas is a court from which the Union is taking an appeal, it was, procedural posture aside, a trial court empowered to direct the Union to file a Statement in accord with Rule 1925(b). The Union's assertion that

Rule 1925(b) applies only to "first level" appeals, Union's Brief at 23, is therefore inaccurate and it was bound by the trial court's Rule 1925(b) order.

Nevertheless, we do not believe Rule 1925(b) waiver applies here. Upon receipt of a notice of appeal, a trial court, "desir[ing] clarification of the errors complained of on appeal, . . . may enter an order directing an appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal." Pa.R.A.P. 1925(b). This same Rule, however, dictates that any issue not included in the Statement shall be deemed waived. *Id*. 1925(b)(4)(vii). In fact, where an issue is not raised in the Statement, or where the appellant has failed to file a Statement altogether, an appellate court will be constrained to deem those issues automatically waived for appellate review. *See, e.g.*, *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1988); *Commonwealth v. Butler*, 812 A.2d 631, 633 (Pa. 2002); *Commonwealth v. Schofield*, 888 A.2d 771, 774 (Pa. 2005).

The Rule's content requirements are similarly strict and carry the same risk of waiver. *Commonwealth v. Eichenger*, 108 A.3d 821, 850 (Pa. 2014). Pertinent now, the Rule provides: "The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge . . . ." Pa.R.A.P. 1925(b)(4)(vii). To this end, the Superior Court has opined that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Dowling*, 778 A.2d at 686-87.[8] But the Rule's Official Note explains that the Rule's use of "the term 'errors' is meant to encourage appellants to use the Statement

---

[8] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

11

as an opportunity to winnow the issues, recognizing that they will ultimately need to be refined to a statement [of the questions involved] . . . ." Our inquiry, then, involves some comparison between the Statement and the issues actually raised before the reviewing court. For example, in *Eichenger*, 108 A.3d at 850, our Supreme Court agreed that an appellant's Statement was too vague because it did "not adequately outline the five discrete evidentiary issues he later raised in his brief . . . . No one, even the learned []court, could have accurately honed in on the issues appellant attempts to raise in his brief from the statement . . . ."

Here, our reading of the Statement indicates that the trial court could have readily ascertained the issues to be raised on appeal. Even if we agree that the Union could have more forthrightly criticized the trial court's July 7, 2023 opinion in its Statement, we do not consider the Statement to be fatally vague or comprised of mere "blanket-statements." *Cf., e.g.*, *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020). In its admittedly unorthodox Statement, the Union sought reversal of the trial court's decision because of its application of collateral estoppel and the trial court's belief that an evidentiary ruling frustrated the Borough's due process rights. To this end, in support of the first error, the Union cited with particularity the timing of the Arbitrator's Award and the WCJ's decision. *See* O.R. at Item No. 14. The Union likewise identified Grievant's refusal to testify as the purported due process violation in support of the second error. *Id.* It is plainly apparent from the Statement, at least in our view, that the Union would raise the issues it later discussed in its brief. We are therefore satisfied that the Union's Statement apprised the trial court of the errors complained of on appeal and decline to find that the Union waived these issues for appellate review.

12

## B. Collateral Estoppel

The Union primarily argues that the trial court fundamentally misunderstood the doctrine of collateral estoppel, because collateral estoppel only operates where there has been a valid, final judgment on the merits. Here, given that the Arbitrator's Award predated the WCJ's decision, the workers' compensation litigation did not reach a final judgment that could have estopped litigation of the "just cause" issue before the Arbitrator. Union's Brief at 19-20. To the extent this Court need reach the elements of collateral estoppel, the Union also notes that the issues litigated before the Arbitrator and WCJ were not identical: the Arbitrator addressed the just cause issue, whereas the WCJ resolved the case by determining that Grievant had not suffered a work injury at all. To the extent that the WCJ addressed the just cause issue, then, it was merely *dicta*. Union's Brief at 14-16.

The Borough, for its part, maintains that the WCJ's decision simply mooted the Arbitrator's Award. Borough's Brief at 19. To the extent the Borough responds to the Union's specific arguments, it argues that it raised its collateral estoppel defense at the earliest opportunity. That opportunity just happened to be before the trial court given the parallel timing of the litigation. The Borough's remaining arguments largely pertain to the competence (or lack thereof) of an arbitral tribunal to render a final, valid judgment with preclusive effect. *Id*. at 25-29 (citing *Cohen v. Workers' Compensation Appeal Board (City of Philadelphia)*, 909 A.2d 1261 (Pa. 2006); *Merrell v. Workers' Compensation Appeal Board*, 158 A.3d 242 (Pa. Cmwlth. 2017)).

"Collateral estoppel, or issue preclusion, is a doctrine which prevents the re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." *Balent v. City of Wilkes-Barre*,

669 A.2d 309, 313 (Pa. 1995). Collateral estoppel will foreclose further litigation where:

> (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Id.* (citing *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Commission*, 950 A.2d 1120 (Pa. Cmwlth. 2008)). The issues decided, however, must have been necessary to the previous judgment. *C.J. v. Department of Public Welfare*, 960 A.2d 494, 499 (Pa. Cmwlth. 2008); *In re Coatesville Area School District*, 244 A.3d 373, 383 (Pa. 2021) ("In some renditions, courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment.").

Though our decisions on this point are few and far between, this Court has rejected the retroactive application of collateral estoppel in the past – even as between jurisdictions of differing competence. In *Bogen v. Civil Service Commission*, 378 A.2d 1307, 1308 (Pa. Cmwlth. 1977), a firefighter sought disability benefits from the City of Philadelphia in connection with a work accident. The Fire Commissioner denied as did the Civil Service Commission and the Philadelphia County Court of Common Pleas (Common Pleas) affirmed the decisions below. *Id.*

During the pendency of this litigation, however, the firefighter successfully sought benefits under the Workmen's Compensation Act. *Bogen*, 378 A.2d at 1308. The award was issued roughly a year after the Civil Service Commission's denial of disability benefits but before the issuance of Common Pleas' decision. *Id.* Before this Court, the firefighter argued that the Civil Service

14

Commission's decision was collaterally estopped by the Workmen's Compensation award. We disagreed in a very brief opinion. However, we noted that, if anything, the inverse was true: the preceding Civil Service Commission decision would have estopped the Workmen's Compensation litigation. *Id*.

Relying on *Bogen*, we expanded upon this principle in *Basset v. Civil Service Commission of City of Philadelphia*, 514 A.2d 984, 986 (Pa. Cmwlth. 1986). The facts therein were strikingly similar: a prison nurse sought disability benefits for an injury she sustained at work. *Id*. at 985. An administrative hearing board and, later, the Civil Service Commission denied the nurse's claim. During the pendency of the nurse's appeal to Common Pleas, the nurse was awarded workmen's compensation benefits which the City of Philadelphia did not challenge by further appeal. *Id*. Common Pleas eventually affirmed the Civil Service Commission's denial.[9]

The nurse then argued before this Court that a judgment is not final for purposes of collateral estoppel while an appeal is pending, such that the Civil Service Commission's judgment did not ripen into a final judgment before the Workmen's Compensation Appeal Board's own decision. *Basset*, 514 A.2d at 985. In effect, the finality of the workmen's compensation litigation meant that it could estop any parallel litigation after the fact. We disagreed. Observing that judgments are "final

---

[9] Without belaboring *Bassett*'s procedural history, Common Pleas initially remanded the matter to the Civil Service Commission to determine whether the workmen's compensation determination collaterally estopped its denial of disability benefits. *Basset*, 514 A.2d at 985. Among other things, "[t]he [Civil Service] Commission affirmed its prior decision, holding that the doctrine of collateral estoppel does not contemplate retroactive application . . . ." *Id*.

for purposes of [technical] res judicata,[10] unless or until *reversed*[,]" we "refuse[d] to apply the doctrine of collateral estoppel retroactively, as [the nurse] suggest[ed]." *Id*. at 986 (emphasis in original). Doing so where the Civil Service Commission's decision preceded Workmen's Compensation determination, we explained, would "obstruct[] the very purpose of the doctrine, namely, to prevent the re[-]litigation of issues concluded by a valid, final and *prior* judgment." *Id*. (emphasis added).

Applying that rationale here, we believe that an arbitrator's award must enjoy the same finality as more common judgments do for purposes of collateral estoppel. Section 7(a) of Act 111, 43 P.S. §217.7(a) (emphasis added), provides: "The determination of the majority of the board of arbitration thus established *shall be final on the issue or issues in dispute* and shall be binding upon the public employer and the policemen or firemen involved." So too, our Supreme Court has explained that Act 111 arbitration panels are "bodies of temporary jurisdiction convened to respond quickly *with absolute finality* to a specific labor conflict, and then disperse." *Breary*, 985 A.2d at 1266 (Pa. 2009) (emphasis added). Act 111 even precludes appeals such that our scope of review over an arbitrator's award is limited to narrow *certiorari*. *Id*. ("No appeal therefrom shall be allowed to any court."); *City of Washington v. Police Department of the City of Washington*, 259 A.2d 437, 441-42 (Pa. 1969) (*Washington Arbitration Case*).

Presently, then, as a valid, final, and prior determination, the Arbitrator's Award could not be estopped by the WCJ's subsequent decision. *Bogen*, 378 A.2d at 1308; *Basset*, 514 A.2d at 986. Were we to sanction the trial

---

[10] "Res judicata encompasses two related, but distinct principles: technical res judicata and collateral estoppel. Technical res judicata provides, where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded. Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were litigated and necessary to a previous judgment." *C.J.*, 960 A.2d at 499 (citations omitted).

court's application of the collateral estoppel doctrine in this manner it would have several perverse effects. First, nullifying the Arbitrator's determinations would be inconsistent with the very purpose of the doctrine, *Basset*, 514 A.2d at 986, and it would likewise frustrate the express finality conferred upon these awards by the General Assembly in Act 111. 43 P.S. §217.7(a); *Breary*, 985 A.2d at 1266.

But, further, "for collateral estoppel to apply between administrative agencies, there must be a showing that the policies and goals underlying the matter at issue are the same in both proceedings." *Logue v. Workers' Compensation Appeal Board (City of Philadelphia)*, 660 A.2d 175, 176 (Pa. Cmwlth. 1995). While an arbitral tribunal is neither an administrative agency nor a court, *Washington Arbitration Case*, 259 A.2d at 440, this principle nevertheless demonstrates why the application of collateral estoppel is especially inappropriate here.

We have explained, albeit in the context of the Public Employe Relations Act,[11] that "binding arbitration is a highly favored method of dispute resolution" as between parties to a collective bargaining agreement. *Pennsylvania State Corrections Officers Association v. Department of Corrections, State Institution at Benner*, 244 A.3d 85, 91 (Pa. Cmwlth. 2020). This is largely because Act 111, and its binding arbitration scheme, is the result of the labor unrest and illegal strikes that plagued the Commonwealth in the 1960s. *Breary*, 985 A.2d at 1266; *see also Michael G. Lutz Lodge No. 5, of Fraternal Order of Police v. City of Philadelphia*, 129 A.3d 1221, 1226-27 (Pa. 2015). In essence, the General Assembly obtained a "*quid pro quo* deal" in which police officers and firefighters forewent the right to strike in favor of collective bargaining and the right to have any grievance or dispute adjusted pursuant to Act 111's terms, *id*. (citing 43 P.S. §217.1), such as

---

[11] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§110.1.101-.2301.

the disciplinary grievance at issue herein.[12] The Workers' Compensation Act, in contrast, serves to provide benefits to employees suffering from work-related disabilities while insulating employers from further liability. *See Tooey v. AK Steel Corp.*, 81 A.3d 851, 857 (Pa. 2013) (The Workers' Compensation Act "seeks to provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer.") (quotations omitted). Thus, even where Act 111 and the Workers' Compensation Act share humanitarian objectives, the former is primarily concerned with labor harmony whereas the latter is concerned with disability benefits and limiting the scope of employer liability.

In the instant grievance dispute, the trial court's retroactive application of collateral estoppel has the effect of supplanting the Arbitrator's Award, itself the culmination of a need "to strike a more perfect balance between the need of the Commonwealth to insure public safety and the rights of the worker[,]" with the conclusions of a WCJ ill-equipped to render a decision that strikes this particular balance. *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, 998 A.2d, 589, 595 (Pa. 2010). Because the underlying acts serve distinctly different policies and goals, endorsing this application of collateral estoppel would frustrate the very purpose of Act 111.[13]

---

[12] *See Northern Berks Regional Police Commission v. Berks County Fraternal Order of Police, Lodge #71*, 230 A.3d 1022, 1033 (Pa. 2022) ("Grievance arbitration is not specifically mentioned in Act 111 . . . . [but] we [have] held that the General Assembly intended for Act 111 and its concomitant body of case law regarding the appellate scope of review to apply to grievance disputes.").

[13] If that were not enough, we also agree with the Union that the WCJ's decision was not necessary to her judgment. The WCJ denied Grievant's claim on the basis that he did not carry his evidentiary burden of proving that a work injury had occurred. *See* WCJ's Opinion at C.L. No. **(Footnote continued on next page…)**

To conclude, "[c]ollateral estoppel is based on the policy that 'a losing litigant deserves no re-match after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'" *Department of Corrections v. Workers' Compensation Appeal Board (Wagner-Stover)*, 6 A.3d 603, 608 (Pa. Cmwlth. 2010) (quoting *McGill v. Southwark Realty Co.*, 828 a.2d 430, 434 (Pa. Cmwlth. 2003)). Here, the Borough, having suffered a fair defeat before the Arbitrator, obtained both a re-match and victory concerning the just cause issue before the trial court. We are therefore constrained to conclude that the trial court erred on this issue.[14]

## C. Due Process

Next, the Union asserts that the trial court erred by inferring an adverse inference from Grievant's refusal to testify before the Arbitrator where the Arbitrator himself did not. Union's Brief at 20-21. The Union proffers that an adverse inference is not mandatory in such instances, *see Baxter v. Palmigiano*, 425 U.S. 308 (1976), but further that an adverse inference cannot compensate for a moving party's failure to carry their burden of proof. Union's Brief at 21 (citing *Fitzpatrick v. Philadelphia Newspapers, Inc.*, 567 A.2d 684, 688 (Pa. Super. 1989)). The

---

2 (Grievant "failed to sustain his burden of proving he sustained a work injury in or on February 2, 2022, based upon the evidence found to be credible, and the evidence not credited."). To the extent the WCJ opined on Grievant's termination, then, it was purely in the alternative. *Id*. at C.L. No. 3. Thus, the doctrine of collateral estoppel would be inapplicable here even if the WCJ's decision had preceded the Arbitrator's Award. *See DTE Energy Company, Inc. v. Workers' Compensation Appeal Board*, 245 A.3d 413, 420 (Pa. 2021).

[14] Given our thorough explanation on this point, we cannot agree that the Borough's due process rights are implicated by foreclosing its ability to assert collateral estoppel as the Borough suggests. Borough's Brief at 22-23. The affirmative defense of collateral estoppel is simply inoperable here for the reasons explained *infra*. Still, we observe that the Borough has offered no support for its argument on this point. *Id*.

Borough responds by discussing instances where this Court has found an arbitrator's application of an adverse inference to be permissible, *see, e.g.*, *Delaware County Lodge No. 27 v. Township of Tinicum*, 908 A.2d 362, 369 (Pa. Cmwlth. 2006), and reiterating that sustaining the Union's objection to the introduction of Grievant's testimony was a denial of its due process rights.

While the parties have offered thorough, compelling arguments, we believe that this issue is largely resolved by our Supreme Court's decision in *Breary*. Therein, our Supreme Court considered whether an arbitrator, tasked with resolving a grievance arbitration, frustrated the City of Philadelphia's due process rights when the arbitrator excluded evidence subject to disclosure under a subpoena the arbitrator had issued. *Breary*, 985 A.2d at 1268. Due to a clerical error, Philadelphia was unable to timely comply with the subpoena. Nevertheless, the arbitrator sought to sanction Philadelphia by excluding the testimony of eight witnesses it had intended to present at the hearing. *Id*. at 1263. In fact, Philadelphia was forced to rest its case given its resulting lack of evidence. *Id*. at 1265.

The High Court ultimately determined that the arbitrator had gone beyond resolving that of a mere technical discovery issue; rather, the arbitrator had frustrated Philadelphia's due process rights by preventing Philadelphia from presenting its case-in-chief. *Breary*, 985 A.2d at 1268-69. The Court acknowledged that "the exclusion of evidence pursuant to [a routine evidentiary] ruling does not typically involve notions of due process." *Id*. at 1268. But the Court nevertheless reasoned:

> Accordingly, while we agree with the [police union] that review of a simple "evidentiary question" would run far afield of narrow *certiorari,* the heart of this matter concerns the propriety of an extreme discovery sanction precluding further action in this case, and, therefore, a

20

valid constitutional claim involving the most basic of rights: due process of law.

*Id.* at 1269.

Unlike Philadelphia in *Breary*, the Arbitrator's evidentiary ruling did not prevent the Borough from presenting its case-in-chief or force the Borough to rest. Here, while the Arbitrator's evidentiary ruling meant that the Grievant did not have to testify and that the Borough could not cross-examine Grievant, the Borough still presented the testimony of its Chief of Police, Arbitrator's Award at 15-25, as well as the deposition testimony of an expert witness concerning use of force "with respect to implementation and policies." *Id*. at 25-31. The Chief testified to his knowledge or ignorance of Grievant's use of force trainings and re-certifications whereas the expert witness testified to the necessity of Grievant's use of force. *See, e.g.*, *id*. at 49. That the Arbitrator did not apply an adverse inference from Grievant's refusal to testify, and that the Arbitrator viewed the Borough's evidence unfavorably as it concerned the Borough's lack of documentation or testimony concerning Greivant's "hands-on" or defensive tactics training, *id*., does not cause this Court to question the fairness of the Borough's opportunity to be heard before the Arbitrator. *Cf. Breary*, 985 A.2d at 1268. Rather, it is the kind of evidentiary ruling that our Supreme Court has admonished "run[s] far afield of narrow *certiorari*." *Id*. at 1269. Thus, due process was not implicated and the trial court lacked jurisdiction to vacate the Arbitrator's award on this basis.

### IV. Conclusion

We appreciate that this procedurally complex matter was made no easier by the disturbing facts underlying this appeal. However, our precedent is clear that the doctrine of collateral estoppel does not contemplate retroactive application

and that routine evidentiary rulings are not encompassed by this Court's narrow scope of review in Act 111 matters.

Accordingly, the trial court's order vacating the Arbitrator's Award is **REVERSED** and this matter is **REMANDED** to that court for reinstatement of the same.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Minersville Borough | : | |
| | : | |
| v. | : | No. 1215 C.D. 2023 |
| | : | |
| Minersville Police Officers' | : | |
| Association, | : | |
| | : | |
| Appellant | : | |

## O R D E R

AND NOW, this 9th day of January, 2026, the July 7, 2023 Order of the Schuylkill County Court of Common Pleas is **REVERSED** and **REMANDED** to the same for reinstatement of the Arbitrator's Award.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge